TOWN OF VANDEN BROEK, Outagamie County, Petitioner and Respondent, v. REITZ and wife, Defendants and Appellants.

*No. 249. Argued November 4, 1971.—Decided November 30, 1971.*
(Also reported in 191 N. W. 2d 913.)

88

For the appellants there was a brief and oral argument by *James R. Scott* and *Stuart E. Schmitz,* both of Milwaukee.

For the respondent there was a brief by *Bollenbeck, Patterson, Froehlich, Jensen & Wylie,* attorneys, and *A. W. Ponath* of counsel, all of Appleton, and oral argument by *Mr. Ponath.*

CONNOR T. HANSEN, J. The petition alleged that Harold and Isabell Reitz, husband and wife (defendants-appellants) have legal settlement in the petitioning town and therefore if public relief is granted to them it must be paid by the town; that defendants reside in Milwaukee county and first obtained relief from Milwaukee county in October, 1967, and have been dependent persons and on relief since that time pursuant to the provisions of sec. 49.01 (4), Stats.; that from October of 1967 to date of petition (July 14, 1970), defendants have received relief from Milwaukee county; that the petitioning town offers and is able to provide employment for defendants in the township so that it will not be necessary for them to be on public relief in Milwaukee county; that petitioner has invited them to return to the town, but they have refused and neglected to come back; that the petitioner is informed that unemployment in Milwaukee county is very high and that there is no immediate or prospective opportunity for defendants to secure employment in Milwaukee county and that petitioner believes

that in view of the fact that defendants remain unemployed in Milwaukee county after residing there since February of 1967, and being on relief most of the time, that they should be required to return to their place of legal settlement, *i.e.*, petitioning town; that their return to the township will not substantially reduce the employment and earning opportunities of the defendants, will not materially disrupt family ties, and will not work any material injustice upon them.

Secs. 49.01 to 49.17, Stats., constitute a plan for general relief to provide eligible dependent persons with necessary commodities, services and money. As applied to the facts of this case, the plan is financed by the taxpayers of the municipality of the recipient's legal settlement, and is totally distinct from state and federal categorical aid plans such as old-age assistance, aid to the blind, aid to families with dependent children, and aid to totally or partially disabled.[1] Legal settlement is established in a municipality by residing therein for one year without receiving assistance of public or private aid, sec. 49.10. Once legal settlement for relief purposes is established in the particular municipality, it continues until it is lost by residing outside the municipality without support as a dependent person for one year.

Thus, since defendants' legal settlement for general relief purposes has been established in the town of Vanden Broek, so it continues until they have been absent therefrom for one year without receiving general relief. The town of Vanden Broek bears the ultimate cost of assistance, notwithstanding that the defendants reside in another municipality or county. Absent a removal proceeding, the municipality of legal settlement may be chargeable for general relief furnished to a recipient residing

[1] There are exceptions and variations of the plan such as sec. 49.03, Optional county systems; however the issue here presented does not relate to such exceptions and variations.

in another municipality for an indefinite number of years.[2]

This appeal concerns sec. 49.09 (1) and (2), Stats., which provide:

"49.09 **Removal of dependents.** (1) When a dependent person, other than a recipient of old-age assistance, aid to blind, aid to families with dependent children, or aid to totally and permanently disabled persons is receiving relief elsewhere than at his place of settlement and refuses to return thereto, the officer or agency of the place administering relief or of the place of settlement may petition the judge of the county court or the judge of any other court of record of the county in which the relief is furnished for an order directing such person to return to his place of settlement. The petition shall state specifically the reasons upon which the order is sought and copies shall be served upon the dependent person, the officer or agency of the place of residence or the place of legal settlement. Notice of hearing shall be served upon the same parties at least 10 days in advance of the hearing. Service may be made personally or by registered mail with return receipt requested.

" (2) If the judge finds that return to the place of legal settlement does not substantially reduce the employment and earning opportunities of the dependent person, does not materially disrupt family ties, and does not work any material injustice to him, he may order the dependent person to return to his place of settlement. The order of the judge for removal shall specify a time beyond which no further relief shall be granted the dependent person unless he returns to the place of his legal settlement and shall further specify the conditions to be complied with by the petitioning municipality to provide

---

[2] This appeal does not concern possible issues relating to defendants' statutory ineligibility to receive general relief from a source other than the town of Vanden Broek. Likewise, no constitutional issue is raised, if there be one, as to the present statutory liability of the taxpayers of the town of Vanden Broek to provide general relief for an indefinite number of years to a person no longer residing in the town.

suitable transportation to the place of settlement. The cost of transportation shall be chargeable to the place of legal settlement and may be recovered as any other relief costs, pursuant to section 49.11. . . ."

Appellants advance three arguments in support of the proposition that the procedure embodied in sec. 49.09 (1) and (2), Stats., is unconstitutional: (1) Denial of equal protection, (2) interferes with the right of privacy, and (3) infringes on the right to travel.

### Equal protection.

Appellants argue that the statutory plan discriminates between persons residing in their established legal settlement and persons residing elsewhere than the place of legal settlement. The latter class is subject to being removed to their place of legal settlement or, upon refusal to do so, is subject to a termination of general assistance, while a person residing at his established legal settlement is subject only to termination of general assistance if he refuses employment.

However, it is only irrational or arbitrary classifications which violate the equal protection clause. *State ex rel. Schopf v. Schubert* (1970), 45 Wis. 2d 644, 173 N. W. 2d 673; *Hill v. Burke* (7th Cir. 1970), 422 Fed. 2d 1195. In *Dandridge v. Williams* (1970), 397 U. S. 471, 485, 90 Sup. Ct. 1153, 25 L. Ed. 2d 491, the court stated:

"In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' *Lindsley v. Natural Carbonic Gas Co.*, 220 U. S. 61, 78. 'The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.' *Metropolis Theatre Co. v. City of*

*Chicago,* 228 U. S. 61, 69–70. 'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' *McGowan v. Maryland,* 366 U. S. 420, 426."

Where, however, a statutory classification is based on either "suspect" criteria [3] or infringes on a constitutional right, it will constitute a denial of equal protection under the fourteenth amendment unless justified by a compelling state interest. *Graham v. Richardson, supra.*

In *Shapiro v. Thompson* (1969), 394 U. S. 618, 89 Sup. Ct. 1322, 22 L. Ed. 2d 600, the court held unconstitutional four state statutes which conditioned the distribution of welfare benefits on a one-year state residency requirement. Each of the four statutes involved assistance plans jointly funded by the state and federal governments.[4] The court based its decision on the constitutional right to travel and condemned as impermissible state objectives, either the deterrence of indigents from migrating to the state or the limitation of welfare benefits according to prior tax contributions. The essence of the court's decision is stated on page 634:

". . . The waiting-period provision denies welfare benefits to otherwise eligible applicants solely because they have recently moved into the jurisdiction. But in moving from State to State or to the District of Columbia appellees were exercising a constitutional right, and any classification which serves to penalize the exercise of that right, unless shown to be necessary to promote a *compelling* governmental interest, is unconstitutional. Cf. *Skinner v. Oklahoma,* 316 U. S. 535, 541 (1942) ; *Korematsu v. United States,* 323 U. S. 214, 216 (1944) ; *Bates v. Little Rock,* 361 U. S. 516, 524 (1960) ; *Sherbert v. Verner,* 374 U. S. 398, 406 (1963) ."

---

[3] Examples of criteria which are inherently "suspect" are alienage, nationality and race. *See Graham v. Richardson* (1971), 403 U. S. 365, 91 Sup. Ct. 1848, 29 L. Ed. 2d 534.

[4] Three of the statutes involved aid to families with dependent children; the fourth involved aid to the permanently and totally disabled.

In *Graham v. Richardson, supra,* a requirement that aliens live in the United States for fifteen years as a condition of eligibility for aid to partially or totally disabled persons (funded jointly by the state and federal governments) was held unconstitutional as a denial of equal protection. The court analogized the discrimination against aliens to the discrimination of nonresidents in *Shapiro* and also based its decision on the fundamental right to travel. Similarly, a plan of general assistance, administered and funded wholly by the state, which denied welfare benefits to noncitizens of the United States, was held to be in conflict with overriding national policies of the federal government. In both cases, the court remarked that "[t]he classifications involved . . . are inherently suspect and are therefore subject to strict judicial scrutiny whether or not a fundamental right is impaired. *Graham v. Richardson, supra,* page 376.

The statutory classification in the instant case is neither suspect nor infringes upon a fundamental right but is reasonably related to the very purpose of general assistance. Sec. 49.002, Stats., states the legislative policy with regard to general assistance:

"49.002 **Legislative declaration.** It is declared to be legislative policy that all recipients of general relief shall have maximum exposure to job training and job opportunities through the Wisconsin state employment service as well as other governmental agencies. Refusal of a bona fide offer of employment or training without good cause, or acceptance and subsequent inadequate performance through wilful neglect, shall necessitate that local, municipal or county welfare officials discontinue general relief payments to such individual. Any Wisconsin taxpayer shall have standing in the circuit court for the purpose of obtaining an injunction to enforce the policy set forth in this section. All personnel shall do their best to get individuals off general relief and into self-supporting productive jobs."

The statutory provisions are based on a policy of encouraging employment and promoting and maintaining both the fiscal and administrative integrity of the program. As the court recognized in *Shapiro v. Thompson, supra,* page 633:

". . . a State has a valid interest in preserving the fiscal integrity of its programs. It may legitimately attempt to limit its expenditures, whether for public assistance, public education, or any other program. But a State may not accomplish such a purpose by invidious distinctions between classes of its citizens. . . . The saving of welfare costs cannot justify an otherwise invidious classification."

In the instant case, there is no invidious discrimination; benefits are not denied on the basis of residency, *i.e.,* whether or not a legal settlement has been established. Regardless of legal settlement, eligible dependents are entitled to assistance. If the criteria for removal are met in the case of a dependent who has a legal settlement and he refuses to return thereto, he is no longer entitled to assistance. Similarly, if an eligible dependent refuses to accept employment in the municipality wherein he resides, he may forfeit eligibility for assistance, irrespective of where his legal settlement is located, or whether he has established a legal settlement. The statute thus operates to coordinate employment opportunities with persons dependent upon general assistance.

In *Wyman v. James* (1971), 400 U. S. 309, 91 Sup. Ct. 381, 27 L. Ed. 2d 408, the New York statutes and regulations prescribing periodic home visits as a condition for continuance of assistance under the program for Aid to Families with Dependent Children (AFDC) were determined to be constitutional. The statutes and regulations provided that if a mother receiving AFDC refused to permit the periodic home visits, the aid could be discontinued. The supreme court held that the mother

was fully within her "rights" to refuse the periodic home visits, but a consequence of the exercise of such right could be a cessation of aid. "The choice is entirely hers, and nothing of constitutional magnitude is involved." *Wyman v. James, supra,* page 324. So here, if the town can meet its burden of proof at the hearing on the petition, the defendants can refuse to return to the town of Vanden Broek—the choice is entirely theirs.

### Right of privacy.

Appellants also contend that sec. 49.09, Stats., is unconstitutional in that it interferes with appellants' constitutional right to privacy, in violation of the ninth and fourteenth amendments. In *Griswold v. Connecticut* (1965), 381 U. S. 479, 484, 85 Sup. Ct. 1678, 14 L. Ed. 2d 510, the court spoke " 'of the sanctity of a man's home and the privacies of life.' " In striking down a Connecticut statute forbidding the use of contraceptives, the court recognized various constitutional guarantees which created zones of privacy. However, it was never there intimated that where one locates one's home is, of necessity, a protected zone of privacy.

While the location of one's home may, in some circumstances, be protected under various other constitutional provisions, it is not a violation of the right to privacy under the ninth and fourteenth amendments.

### Right to travel.

"The constitutional right to travel from one State to another, . . . has been firmly established and repeatedly recognized." *United States v. Guest* (1966), 383 U. S. 745, 757, 86 Sup. Ct. 1170, 16 L. Ed. 2d 239, although it is ascribed to no particular constitutional

provision. *Graham v. Richardson, supra; Shapiro v. Thompson, supra.*[5] Explicit in *Shapiro* and *Graham* is that the right to travel envisions movement from place to place unimpaired by discriminatory laws. Although the supreme court has never specifically decided the question, appellants urge that the right to travel embraces *intrastate* as well as interstate travel. In *King v. New Rochelle Municipal Housing Authority* (2d Cir. 1971), 442 Fed. 2d 646, 648, the court held unconstitutional a local five-year residency requirement that was a prerequisite for admission to public housing. In answer to the contention that the right to travel embraces only interstate movement, the court said:

". . . It would be meaningless to describe the right to travel between states as a fundamental precept of personal liberty and not to acknowledge a correlative constitutional right to travel within a state."

However, the concluding paragraph in the *King* opinion states:

"In reaching our conclusion we emphasize that we are here deciding only the validity of a durational residency requirement for admission to public housing. As in *Shapiro* there is no contention here that a state or a local government may not require that applicants for public services be *bona fide* residents. Nor do we suggest any opinion as to the validity of durational residency requirements, many of which assuredly do promote significant state interests." *King v. New Rochelle Municipal Housing Authority, supra,* page 649.

Appellants argue that this court implicitly recognized the intrastate nature of the right to travel in *Ervin v. State* (1968), 41 Wis. 2d 194, 163 N. W. 2d 207. We

[5] For specific constitutional provisions which the supreme court has suggested for the source of the right to travel, see the dissenting opinion of Mr. Justice HARLAN in *Shapiro v. Thompson, supra,* pages 666–671.

do not consider the issue therein considered to be at all relevant to the instant case.

Assuming, without deciding, that the right to travel envisions intrastate as well as interstate movement, in this case we find no showing that the defendants' right to travel is impaired. They moved to Milwaukee in February of 1967, first received general relief in October of 1967, and the petition alleges they have been dependent persons on relief since that time. Here the defendants apparently want to continue to live in Milwaukee and have the town of Vanden Broek pay their relief costs.

Under the statutory plan, eligible dependents are not denied the right to move freely about the state, and they are entitled to receive necessary assistance wherever they reside. A dependent may be removed, or general relief terminated, only on petition by the municipality of legal settlement followed by a judicial determination that a return to the place of legal settlement ". . . does not substantially reduce the employment and earning opportunities of the dependent person, does not materially disrupt family ties, and does not work any material injustice to him . . . and further the judge may in his discretion at any time entertain an application by the dependent person or either municipality to revoke such removal order and upon giving of notice and hearing . . . may revoke such order temporarily or permanently." Sec. 49.09 (2), Stats.

In *Shapiro v. Thompson, supra,* page 629, it was stated:

"We do not doubt that the one-year waiting-period device is well suited to discourage the influx of poor families in need of assistance. An indigent who desires to migrate, resettle, find a new job, and start a new life will doubtless hesitate if he knows that he must risk making the move without the possibility of falling back on state welfare assistance during his first year of residence, when his need may be most acute. But the

purpose of inhibiting migration by needy persons into the State is constitutionally impermissible."

Surely the provisions of sec. 49.09 (1) and (2), Stats., cannot be said to be statutes designed to inhibit migration about the state for the purpose of resettling, finding a new job or starting a new life. There is no language in the section which can in any way be interpreted as discouraging the influx of families needing assistance into a community. The fact that defendants have lived in Milwaukee on general relief for over three years speaks for itself.

We, therefore, conclude that the provisions of sec. 49.09 (1) and (2), Stats., are not constitutionally impermissible.

*By the Court.*—Order affirmed.

HEFFERNAN, J. (*concurring*). I agree with the result reached by the court, but only because the question validly raised by the dissent is not necessarily reached in this case. In the event the recipient were obligated to return to his original legal settlement in order to receive welfare payments, the statute would be patently unconstitutional. I am convinced, however, by the very cases cited by the dissent that appellant constitutionally could not be denied payments either from the state or the county in which he now resides. It is apparent that the concept of "legal settlement" as revealed in this case—a concept that would make the original place of residence perpetually liable—is sheer nonsense. I am satisfied that the appellant cannot be obligated to return to the town of Vanden Broek. I am equally satisfied that the town of "legal settlement" should not have an obligation to make those payments after the recipient has removed himself from that locale for a reasonable length of time.

WILKIE, J. (*dissenting*). In my judgment, sec. 49.09, Stats., places an impermissible restriction on the right of an individual to travel within the state, thus violating both the state and federal constitutions; therefore, I dissent. Although there is some disagreement over which particular provision of the federal constitution grants such right, it is nonetheless true that the constitutional right to travel has been recognized by the United States Supreme Court as early as in the *Passenger Cases* of 1849.[1]

In *Kent v. Dulles*[2] the court emphasized the importance of this right:

"The right to travel is a part of the 'liberty' of which the citizen cannot be deprived without due process of law . . . . In Anglo-Saxon law that right was emerging at least as early as the Magna Carta [footnote omitted]. Chafee, Three Human Rights in the Constitution of 1787 (1956), 171–181, 187 *et seq.*, shows how deeply engrained in our history this freedom of movement is. Freedom of movement across frontiers in either direction, and inside frontiers as well, was a part of our heritage. Travel abroad, like travel within the country, may be necessary for a livelihood. It may be as close to the heart of the individual as the choice of what he eats, or wears, or reads. Freedom of movement is basic in our scheme of values. [Citations omitted.] 'Our nation,' wrote Chafee, 'has thrived on the principle that, outside areas of plainly harmful conduct, every American is left to shape his own life as he thinks best, do what he pleases, go where he pleases.' *Id.*, at 197."

As to the Wisconsin Constitution, I believe that this same basic right to freedom of movement is included within the "inherent rights" guaranteed by art. I, sec. 1.[3]

---

[1] (1849), 48 U. S. (7 How.) 283, 12 L. Ed. 702.

[2] (1958), 357 U. S. 116, 125, 126, 78 Sup. Ct. 1113, 2 L. Ed. 2d 1204.

[3] Art. I, sec. 1, Wis. Const. "Equality; inherent rights. SECTION 1. All men are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit

As noted by the majority, *Shapiro v. Thompson* [4] struck down various states' residency requirements for welfare recipients because they restricted the poor person's migration. The basic nature of this right to free migration was most recently emphasized in *Pease v. Hansen* [5] wherein the supreme court said that such residence requirements were invalid even when no federal funds were involved.

Applying these concepts to the present appeal, I believe that the statutory scheme is unconstitutional. Mr. and Mrs. Reitz moved to Milwaukee early in 1967, and now, more than four years later, they are being required to pack up and return to the town of Vanden Broek. Because the legislature has seen fit to adopt the fiction of "legal settlement," the town can force these pople to give up their home in Milwaukee and return to Vanden Broek as a condition precedent to receiving welfare benefits. In view of this fact, I am at a loss to understand the majority's finding that "the defendants' right to travel is [not] impaired." The basic concept behind "removal" as authorized by sec. 49.09, Stats., is to restrict the welfare recipient's right to move within the state. He moves where he chooses but always subject to removal back to where he came from. The majority opinion states that "the defendants apparently want to continue to live in Milwaukee and have the town of Vanden Broek pay their relief costs." As I read the statute, defendants have no choice, they must receive their benefits from Vanden Broek.

Under sec. 49.09, Stats., the trial court is authorized to order a poor person to leave his home and move back to the place of "legal settlement" only because he receives

of happiness; to secure these rights, governments are instituted among men, deriving their just powers from the consent of the governed."

[4] (1969), 394 U. S. 618, 89 Sup. Ct. 1322, 22 L. Ed. 2d 600.

[5] (1971), 404 U. S. 70, 92 Sup. Ct. 318, 30 L. Ed. 2d 224.

welfare benefits and only upon a showing that he would be no worse in the place of "legal settlement" than in the place of his choice. I would declare sec. 49.09 unconstitutional and would therefore reverse the order of the county court.