# TAVERN LEAGUE OF WISCONSIN, Plaintiff-Respondent and Cross-Appellant,

## v.

# CITY OF MADISON, Defendant-Appellant and Cross-Respondent.†

Court of Appeals

*No. 85–0365. Submitted on briefs March 6, 1986.—Argued April 17, 1986.*

(Also reported in 389 N.W.2d 54.)

† Petition to review denied.

For the defendant-appellant and cross-respondent the cause was submitted on the briefs of *Henry A. Gempeler,* city attorney, and *Larry W. O'Brien,* assistant city attorney.

For the plaintiff-respondent and cross-appellant the cause was submitted on the briefs of *Gregory J. Paradise* and *Mohs, MacDonald & Widder* of Madison.

Before Gartzke, P.J., Dykman and Eich, JJ.

EICH, J.   The City of Madison appeals, and the Tavern League of Wisconsin cross-appeals, from a declaratory judgment invalidating a city ordinance. The ordinance authorized the city clerk to withhold issuance of liquor licenses granted by the common council if it appears that the licensees have outstanding and unpaid federal, state or municipal taxes, assessments or forfeitures. The trial court ruled that: (1) the City of Madison has statutory authority to condition the grant of a liquor license on payment of local taxes, but not on federal or state taxes; (2) the ordinance does not violate the equal protection provisions of the state and federal constitutions; and (3) the ordinance violates the "minimum due process requirements" of sec. 125.12, Stats., because it fails to provide for notice and hearing prior to "suspension" of the license.

The appeal challenges the court's ruling that the ordinance exceeds the city's statutory authority and violates due process. The cross-appeal seeks reversal of the declaration that the ordinance meets the requirements of the equal protection clause.

We conclude: (1) that the city lacks authority to require payment of federal and state taxes as a condition of licensure; and (2) that the ordinance violates both the equal protection and due process clauses. As a result, we affirm the judgment, although for slightly different reasons than those offered by the trial court.

The case proceeded on stipulated facts. The Madison Common Council grants liquor licenses annually.

Licensees apply for renewal of their licenses each year, and the ordinances require the council to act upon all applications within a specified time. Once granted by the council, the licenses are issued through the office of the city clerk.

The challenged ordinance, Madison General Ordinances sec. 9.01 (1983), provides in part:

> In the event a license is granted by the Common Council . . . the Clerk shall hold and not issue the license until the Treasurer certifies that all personal property taxes and room taxes imposed pursuant to Section 4.21 hereof and all other federal, state or local taxes, assessments, claims and forfeitures resulting from a violation and conviction of any City ordinance due and owing . . . are paid in full.

The clerk enforces the ordinance by withholding issuance of the granted license, basing his or her action on communications from state or federal agencies or other departments of city government. The ordinance makes no provision for notice or hearing prior to the clerk's decision to withhold a license, and the city concedes that the sole, or at least the primary, purpose of the ordinance is to secure collection of federal, state and local taxes.

The trial court's rulings on the points raised by the parties involve only questions of law which we review *ab initio. Ball v. District No. 4, Area Board,* 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984).

## I. STATUTORY AUTHORITY

We agree with the trial court that it is within the city's authority to condition the issuance of liquor li-

censes upon the applicant's payment of local taxes, assessments and forfeitures.

■

Municipalities glean their powers from the state constitution[1] and statutes. Under sec. 62.11(5), Stats., municipal legislative bodies are granted the power

> to act for the government and good order of the city, for its commercial benefit, and for the health, safety, and welfare of the public, and may carry out [their] powers by license, regulation, suppression, borrowing of money, tax levy, appropriation, fine, imprisonment, confiscation, and other necessary or convenient means. The powers hereby conferred shall be in addition to all other grants, and shall be limited only by express language.

The Tavern League argues that the city's police-power authority under sec. 62.11(5), Stats., is limited by sec. 125.10(1), Stats. That section authorizes municipalities to adopt "regulations for the sale of alcoholic beverages, not in conflict with this chapter," and the league contends that because collection of municipal taxes has nothing to do with liquor "sales," M.G.O. sec. 9.01 exceeds the city's powers. We disagree.

■

Under sec. 62.11(5), Stats., the city's power to act in matters of local concern is limited "only by express language" elsewhere in the statutes. Thus, unless there

---

[1] The constitution's "Home Rule Amendment," Wis. Const. art. XI, sec. 3, gives municipalities the power to "determine their local affairs . . . subject only to this constitution and to . . . enactments of the legislature of statewide concern. . . ." Because the state has entered the regulation of the liquor industry by enacting ch. 125, Stats., the Home Rule Amendment is inapplicable and we must look to the statutes to determine the city's authority.

is express statutory language restricting that power, or unless existing state legislation is logically inconsistent with the city's exercise of those powers, the city has the authority to act for "its commercial benefit, and for the . . . welfare of the public." *Wis. Asso. of Food Dealers v. City of Madison,* 97 Wis. 2d 426, 432, 293 N.W.2d 540, 544 (1980). The supreme court has added a further limitation: ordinances may not " 'infringe the spirit of a state law or . . . general policy of the state.' " *Wis. Environmental Decade, Inc. v. DNR,* 85 Wis. 2d 518, 534, 271 N.W.2d 69, 76 (1978), quoting *Fox v. Racine,* 225 Wis. 542, 545, 274 N.W. 513, 514 (1937).

Nothing in ch. 125, Stats., expressly limits the city's authority to require liquor licensees to meet local requirements in addition to those found in the statutes. Nor do we see that conditioning the license on payment of outstanding local taxes, assessments and forfeitures conflicts with the spirit of the state's regulatory scheme. It is a local condition on the issuance of licenses for the sale of liquor that is geared to local concerns and offers local benefits.

The same may not be said, however, for the city's authority to act as a collector of federal and state taxes, assessments and forfeitures. As we have said, the city's powers under sec. 62.11(5), Stats., are powers to act for the local good and for its own "commercial benefit."

The legislature has enacted a comprehensive scheme for the levy, assessment and collection of taxes. *See* secs. 71.13(1)(a), 71.13(3)(a) and 77.62(1), Stats. Adoption of a municipal ordinance providing for the enforcement and collection of state taxes is "contrary to the spirit of . . . and in conflict with the . . . comprehensive plan" of state taxation and collection and is

therefore beyond the city's powers. *Anchor Savings & Loan Ass'n v. Madison EOC,* 120 Wis. 2d 391, 402, 355 N.W.2d 234, 240 (1984) (city ordinance prohibiting discriminatory lending practices held invalid in light of comprehensive state anti-discrimination program).

We conclude that the city lacks statutory authority to adopt an ordinance providing procedures for the collection of state taxes.[2] And, while such an ordinance may be within the city's powers with respect to local taxes under sec. 62.11(5), Stats., the ordinance in question, insofar as it attempts to secure payment of state and federal taxes, is constitutionally flawed.

## II. EQUAL PROTECTION

All legislative acts are presumed to be constitutional and will not be declared invalid unless shown to be so beyond a reasonable doubt. *State ex rel. Hammermill Paper Co. v. La Plante,* 58 Wis. 2d 32, 46, 205 N.W.2d 784, 792 (1973). The league's challenge is to the legislative classification: it argues that the ordinance unreasonably treats liquor licensees differently than other city license or permit holders. To succeed on such a challenge, the league must demonstrate that the ordinance bears no rational relationship to legitimate municipal objectives, *State ex rel. Grand Bazaar v. Milwaukee,* 105 Wis. 2d 203, 209, 313 N.W.2d 805, 808

---

[2] We note that the 1985 state budget bill contained provisions amending both the tax and liquor regulatory statutes to specifically authorize municipalities to withhold issuance of liquor licenses where the licensees had outstanding state tax liabilities. 1985 Assembly Bill 85, sec. 1416, 1807, 1809. The proposed changes did not pass. *See* 1985 Wis. Act 29.

(1982), for equal protection of the law is denied only where the legislative body has made an irrational or arbitrary classification. *Vanden Broek (Town of) v. Reitz,* 53 Wis. 2d 87, 92, 191 N.W.2d 913, 916 (1971), *appeal dismissed,* 406 U.S. 902 (1972). We believe the league has met that burden.

We review equal protection challenges by applying a five-part test: (1) the classification must be based on substantial distinctions; (2) it must be germane to the purpose of the law; (3) it must not be based on existing circumstances only; (4) the law must apply equally to each member of the class; and (5) the characteristics of each class should be so far different from those of other classes as to reasonably suggest the propriety of substantially different legislation. *Omernik v. State,* 64 Wis. 2d 6, 19, 218 N.W.2d 734, 742 (1974). "The basic test is not whether some inequality results from the classification, but whether there exists any reasonable basis to justify the classification." (Footnotes omitted.) *Id.* The trial court focused on the unique characteristics of the tavern industry and its "special social responsibilities" and concluded that M.G.O., sec. 9.01, met all of the *Omernik* tests. We conclude otherwise.

As indicated, the purpose of the ordinance is to secure the collection of federal, state and local taxes from persons and business entities selling alcoholic beverages in the City of Madison. In *Grand Bazaar,* the supreme court, noting the substantial "overlap" of the *Omernik* criteria, suggested that the purpose of the challenged ordinance is an appropriate consideration

when evaluating the propriety of a legislative classification.[3]

Sellers of alcoholic beverages comprise only one among several categories of individuals and businesses required to seek and obtain licenses in order to do business in Madison. Under M.G.O., secs. 9.03, 9.04, 9.13, 9.14, 9.15, 9.17 and 9.21 (1983), the city licenses dance halls, theatres, street sellers, solicitors and canvassers, hawkers, peddlers, truckers, transient merchants, and junk and salvage dealers, among others.

We agree with the league that there is no substantial distinction between liquor licensees and the other classes of city license and permit holders with respect to ensuring payment of taxes, assessments and forfeitures. We have no quarrel with the city's statement that the existing, extensive police-power regulation of the industry is grounded on the social ramifications of alcohol consumption. "[S]tates . . . are endowed with 'something more than the normal' police power in regulating the sale of liquor *in the interests of the public health, safety, morals and general welfare.*" (Emphasis in original.) *Grand Bazaar,* 105 Wis. 2d at 217, 313

---

[3] The ordinance in *Grand Bazaar* required liquor licensees to receive at least fifty percent of their income from on-premises sales. A separate ordinance contained a "grandfather clause" exempting existing licensees from the percentage requirement.

In arguing for the validity of the grandfather clause, the city stressed its purpose as a basis for the distinction: the protection of all existing non-conforming establishments from the economic hardships involved in meeting the new standard. The supreme court rejected the argument and, after discussing the alleged purpose of the grandfather ordinance, concluded that the classification it created was "not [based upon] a 'substantial distinction.' " *Id.* at 215–16, 313 N.W.2d at 811–12.

N.W.2d at 812, quoting *California v. La Rue,* 409 U.S. 109, 114 (1972). Whatever its unique character in other situations, however, there is nothing unique about the liquor or tavern industry with respect to taxation and tax collection. We are satisfied beyond reasonable doubt that no substantial distinction exists upon which to classify liquor licensees separately from other city licensees, for such purposes.[4]

There is no suggestion in this record that tax delinquency or tax evasion is any more prevalent, or tax collection any more difficult, in the case of liquor licensees as opposed to other city licensees or other businesses generally. Nor has the city established that there is an evil so inherently serious in the liquor industry as to justify a "piecemeal" approach to regulation. *See State ex rel. Baer v. Milwaukee,* 33 Wis. 2d 624, 634, 148 N.W.2d 21, 26 (1967) (police power legislation may proceed "piecemeal" depending on the "seriousness of the evil" presented in a particular industry).

By arbitrarily and unreasonably classifying sellers of alcoholic beverages separately from all other city licensees for the purpose of tax collection, the ordinance

---

[4] The city suggests that a separate classification for the liquor industry has a moral justification in that the "inherent potential problems caused by the abuse of their product" demands "responsible action." In the city's view, "[o]ne element of responsible action is timely payment of monies owed to the . . . government."

Emerson noted that, "[b]eauty will not come at the call of the legislature." R.W. Emerson, *Art,* Essays by Ralph Waldo Emerson 342 (1883). The same may be said, we believe, for morality. We are unable to draw any moral distinction among the various licensed occupations with respect to the collection of taxes.

violates the constitutional guarantees of equal protection of the law.

## III. DUE PROCESS

The trial court ruled that M.G.O., sec. 9.01, violates due process. Constitutional due process protections apply to procedures affecting licenses necessary to engage in one's livelihood, *Bell v. Burson,* 402 U.S. 535, 539 (1971), and it has been held that the interest in renewal of a liquor license is a "property interest" for purposes of the fourteenth amendment. *Reed v. Village of Shorewood,* 704 F.2d 943, 949 (7th Cir. 1983).

The city concedes these rules and agrees that, by prescribing the procedures for nonrenewal, suspension or revocation of liquor licenses in sec. 125.12, Stats., the state has established the minimum due process requirements city officials must follow in taking such actions. The statutory procedures include notice, a full hearing and the right to judicial review.

The city argues, however, that a liquor licensee gains no property interest in the license, and thus acquires no due process rights, by reason of the common council's grant. It maintains that a constitutionally protected interest arises only upon the subsequent issuance of the license by the city clerk.

The trial court rejected that argument, and we agree fully with its analysis and conclusion:

> A liquor license is "granted" by the Common Council after all of the legal requirements for its issuance have been met and the Council has exercised its discretion. The license, however, is not "issued"

489

(that is delivered to the licensee) until the City Clerk certifies that all taxes have been paid. Regardless of the semantics, the party has met all of the legal requirements and been granted the right to operate under a license, but cannot obtain this license and do business until all taxes and other charges are paid and the license is actually issued. Thus, granting the license but failing to issue it until all taxes and other charges are paid as ascertained and certified by the Clerk can be properly viewed as a suspension of that license.

Furthermore, if the licensee wishes to contest the Clerk's determination that all taxes and charges have not been paid, there is no provision for a hearing. As admitted by the City, the Clerk's duties under the ordinance are ministerial and not discretionary. Thus, the Clerk merely determines what taxes and charges are *reported* due and owing and then is prohibited from issuing the license until those taxes and charges are paid. If the Clerk makes a mistake, or the taxes, claims forfeitures etc. are contested, or the taxes assessed relate only to a landlord's property while the licensee is merely a tenant, the Clerk has no discretion to resolve the dispute and issue a license if appropriate. From the foregoing, it is apparent that a licensee may, in fact, be deprived of a valuable property interest in the license without notice and hearing as required by state law.

It is irrelevant that taxes are not disputed most of the time. An ordinance which permits the deprivation of a valuable property right once in a while without a hearing is still a deprivation of due process. Chapter 125, Stats., provides the minimum due process requirements when a license is suspended. The ordinance in question fails to provide that minimum due process when a liquor license is not issued

for nonpayment of taxes or other charges; thus, the enactment of section 9.01, M.G.O., exceeds the authority of the City of Madison under state law.

*By the Court.*—Judgment affirmed.