Diane BRANDMILLER, Shane Evans, Jodie Kowalski, Wendy Miller and Pamela Rogers, Plaintiffs-Appellants,†

v.

Phillip ARREOLA, John C. Butoric, DuWayne Dzubin-ski, City of Greenfield, Village of Hales Corners, Chester Kass, City of Milwaukee, City of West Allis and Wayne Sagodzinski, Defendants-Respondents.

Court of Appeals

*No. 93–2842. Submitted on briefs August 2, 1994.—Decided November 8, 1994.*

(Also reported in 525 N.W.2d 353.)

†Petition to review granted.

217

For the plaintiffs-appellants the cause was submitted on the briefs of *Rex R. Anderegg* of *Law Offices of William A. Pangman & Associates, S.C.* of Waukesha.

For the defendant-respondent City of Greenfield the cause was submitted on the joint briefs of *Roger C.*

*Pyzyk*, city attorney, of West Allis; for the defendant-respondent Village of Hales Corners the cause was submitted by *Jesse A. Wesolowski*, village attorney, of Franklin; for the defendant-respondent City of Milwaukee the cause was submitted by *Charles R. Theis*, deputy city attorney, of Milwaukee; for the defendant-respondent City of West Allis the cause was submitted by *Scott E. Post*, assistant city attorney, of West Allis.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

WEDEMEYER, P.J.  Diane Brandmiller, Shane Evans, Jodie Kowalski, Wendy Miller and Pamela Rogers (collectively, Brandmiller[1]) appeal from an order granting summary judgment concluding that the City of West Allis Ordinance No. 10-18, City of Milwaukee Ordinance No. 900-41, City of Greenfield Ordinance No. 1691 and Village of Hales Corners Ordinance No. 90-16 are constitutional. Each ordinance prohibits "cruising."

Brandmiller essentially raises three issues of error: (1) whether the cruising ordinances are unconstitutional; (2) whether the municipalities' cruising ordinances are violative of the police powers doctrine; and (3) whether state law preempted the municipalities' regulation of "cruising." Because the cruising ordinances do not violate any constitutional rights, because they demonstrate a valid exercise of police power, and because the preemption argument raised by appellants was waived at the trial court level, we affirm.

---

[1] Although there are five individual appellants, we refer to them in the singular, as "Brandmiller," in this opinion.

## I. BACKGROUND

The municipalities of West Allis, Milwaukee, Greenfield and Hales Corners enacted ordinances barring "cruising." The ordinances are essentially identical in findings, purpose and wording. Each municipality found that a threat to public health, safety and welfare arises from the traffic congestion generated by repetitive unnecessary driving of motor vehicles on certain streets. Based on these findings, each municipality enacted a "cruising" ordinance, the purpose of which was to reduce the dangerous traffic congestion, noise, and air pollution; to ensure access for emergency vehicles on the designated streets; and to reduce impediments to normal traffic flow.

The ordinances[2] defined "cruising" as driving a motor vehicle past a designated traffic control point

---

[2] Because the ordinances are essentially identical, only the text of one ordinance is reprinted here. The Village of Hales Corners ordinance provides:

(1) FINDINGS AND PURPOSE. It is hereby found that a threat to the public health, safety and welfare arises from the congestion created by the repetitive unnecessary driving of motor vehicles, also known as cruising, at certain times on certain highways within the Village of Hales Corners. The purpose of this ordinance is to reduce the dangerous traffic congestion, as well as the noise, air pollution, obstruction of streets, sidewalks and parking lots, impediment of access to shopping centers or other buildings open to the public, interference with use of property or conduct of business resulting from cruising, and to insure access for emergency vehicles to and through the said highways.

(2) DEFINITIONS.
    (a) "Cruising" shall mean driving a motor vehicle past a traffic control point, on a highway in the designated area, more than twice in any two (2) hour period between the hours of 8:00 p.m. and 5:00 a.m. Passing a designated control point a third time under the aforesaid conditions shall constitute unnecessary repetitive driving and cruising and, therefore, a violation of this section.

more than twice in any two-hour period during a designated time span. In addition, the ordinance designated specific streets on which it is illegal to "cruise." A violation of the ordinance is penalized by a monetary forfeiture.

On May 26, 1990, West Allis police ticketed Brandmiller for violating the City's cruising ordi-

(b) "Designated area" shall mean South 108th Street from the North Village Limits to the South Village Limits; West Forest Home Avenue from the East Village Limits to the South Village Limits; West Janesville Road from South 108th Street to the West Village Limits.

(c) "Traffic control point" shall mean a reference point within or adjacent to a designated area selected by a police officer for the purpose of enforcing this section.

(3) CRUISING PROHIBITED. It shall be unlawful for anyone to engage in cruising. For the purposes of this section, the person having control or ownership of a motor vehicle shall be considered the person cruising, without regard as to whether that person was actually driving the motor vehicle each time it passed the traffic control point. Having control or ownership of a motor vehicle shall mean either the owner of said vehicle, if present in the vehicle at the time of the violation, or, if the owner is not present, the person operating the vehicle at the time of violation.

(4) EXCLUSIONS. This section shall not apply to:

(a) Any publicly owned vehicle or any city, county, state, federal or other governmental unit, while such vehicle is being used for official purposes of said governmental unit.

(b) Any authorized emergency vehicle.

(c) Any taxicabs for hire, buses, or other vehicles being driven for business purposes.

(5) PENALTY. The penalties provided herein shall supersede the provisions of Section 2.21, Village Code, in the event of any conflict. Any person violating the provisions of this ordinance shall forfeit:

(a) The sum of $50 upon the first conviction under this ordinance within a one-year period.

(b) The sum of $100 upon the second conviction under this ordinance within a one-year period.

(c) The sum of $200 upon the third and each subsequent conviction under this ordinance within a one-year period.

nance.[3] Brandmiller filed a motion for summary judgment requesting declaratory and injunctive relief. The municipalities similarly sought summary judgment declaring the cruising ordinances constitutional. The trial court granted the municipalities' motion for summary judgment. Brandmiller now appeals.

## II. STANDARD OF REVIEW

In reviewing a summary judgment decision, we apply the standards set forth in § 802.08(2), STATS., in the same manner as the trial court. *County of Dane v. Norman*, 174 Wis. 2d 683, 686, 497 N.W.2d 714, 715 (1993). Because there is no disagreement as to the issues of material fact, this court must decide which of the moving parties is entitled to judgment as a matter of law. This court decides questions of law *de novo*. This same standard applies to constitutional challenges when the facts are not in dispute. *State v. Bertrand*, 162 Wis. 2d 411, 415, 469 N.W.2d 873, 875 (Ct. App. 1991).

## III. DISCUSSION

*1. Constitutional Challenges.*

Brandmiller asserts eleven constitutional challenges; however, in reviewing the record and briefs, we recognize that the eleven challenges fall into three cat-

---

[3] Each of the members of the class, certified pursuant to § 803.08, STATS., were ticketed for violation of a cruising ordinance. Given the issues on appeal, however, the dates and particular circumstance of each violation is irrelevant to our resolution and, therefore, we include only a representative violation date for the entire class in the text of this opinion.

egories that we will discuss. Brandmiller claims: (1) the ordinances violate the constitutional right to travel and other constitutional rights emanating therefrom; (2) the ordinances violate the right of privacy; and (3) the ordinances are unconstitutionally overbroad. Any of Brandmiller's challenges not discussed with specificity can be deemed to lack sufficient merit to warrant individual attention. *See State v. Waste Management, Inc.*, 81 Wis. 2d 555, 564, 261 N.W.2d 147, 151 (an appellate court need not address every issue raised), *cert. denied*, 439 U.S. 865 (1978).

In reviewing each constitutional challenge, we note that ordinances are presumed to be constitutional and the burden is on Brandmiller to establish, beyond a reasonable doubt, that the ordinance is unconstitutional. *Peppies Courtesy Cab Co. v. City of Kenosha*, 165 Wis. 2d 397, 401, 475 N.W.2d 156, 158 (1991).

## Right to Travel and Other Constitutional Rights

We begin our discussion with Brandmiller's claim that the ordinances are unconstitutional because they violate her right to travel. We acknowledge that this court discussed the right to travel in relation to a cruising ordinance in *Scheunemann v. City of West Bend*, 179 Wis. 2d 469, 478-81, 507 N.W.2d 163, 166-67 (Ct. App. 1993). The *Scheunemann* court, however, did not specifically address whether the right to travel guarantees the right to drive a car repeatedly on the same street. We specifically address this issue and conclude that the right to travel does not guarantee such a right. Our conclusion is based on the meaning and application afforded the "right to travel."

224

The right to travel, both *interstate* and *intrastate*, involves the freedom to migrate from one state to another (the right to change one's residence from one state to another) or the right to change one's residence within a state. *See United States v. Guest*, 383 U.S. 745, 757-59 (1966); *Town of Vanden Broek v. Reitz*, 53 Wis. 2d 87, 96-98, 191 N.W.2d 913, 918-19 (1971), *appeal dismissed*, 406 U.S. 902 (1972). Cruising does not involve moving from one residence to another. Cruising involves driving the same motor vehicle three times or more, within a two-hour period, past a traffic control point on a designated street during a designated time period. Because cruising does not involve migration, the right to travel does not protect "cruising."

Brandmiller attempts to bring cruising under the ambit of the right to travel by defining the right to travel, in a more transitory sense, as the freedom to drive repeatedly on the streets of her community. We reject Brandmiller's attempt to expand the meaning of the right to travel. We do acknowledge, however, that transitory movement within a community is a constitutionally guaranteed right—the right of freedom of movement. *Ervin v. State*, 41 Wis. 2d 194, 200-01, 163 N.W.2d 207, 210-11 (1968). The inherent right of freedom of movement involves the freedom to move about on the sidewalks and streets of a community. *Id.* This right to freely move about one's community is separate and distinct from the right to interstate travel. *City of Milwaukee v. K.F.*, 145 Wis. 2d 24, 42, 426 N.W.2d 329, 337 (1988). The ordinances do not prohibit all means of movement, only movement of motor vehicles on designated streets during a designated time period. If Brandmiller wanted to exercise her freedom to move

about on the designated street, during the designated time, past a traffic control point more than twice, she is entirely free to do so on foot, on a bicycle, on a bus, in a taxi or by any other means imaginable, except in her car. Travel by car is subject to regulation. *See State v. Seraphine*, 266 Wis. 118, 123, 62 N.W.2d 403, 406 (1954); *State v. Stehlek*, 262 Wis. 642, 646, 56 N.W.2d 514, 516 (1953) (the operation of motor vehicles on the highways in this state is a privilege, not a right and is subject to reasonable regulation by the police power). Therefore, we conclude that the cruising ordinances do not violate either the right to travel or the right of freedom of movement.

Brandmiller also claims the cruising ordinances violate liberty rights, inherent rights, natural law, and the Ninth, Tenth and Fourteenth Amendments.[4] Each of these challenges is based on the proposition that driving a car is a fundamental right. We reject this proposition for the same reason that an individual's right of freedom of movement is not compromised by the prohibition of "cruising"; that is, driving a car in

---

[4] Specifically, Brandmiller claims the ordinances are unconstitutional because they violate: (1) the inherent and fundamental liberty rights recognized in the Wisconsin Constitution recited in the preamble and Article I, Sections 1 and 22; (2) the natural rights protected by the federal constitution; (3) the Ninth Amendment to the federal constitution providing that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people"; (4) the Tenth Amendment providing that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people"; and (5) the due process clause of the Fourteenth Amendment.

Wisconsin is a privilege, not a right. *Seraphine*, 266 Wis. at 123, 62 N.W.2d at 406; *Stehlek*, 262 Wis. at 646, 56 N.W.2d at 516. In accepting a driver's license from this state, one must accept and agree to abide by all reasonable conditions imposed by the state. *Stehlek* at 647-48, 56 N.W.2d at 516-18. Therefore, whenever an individual chooses to get behind the wheel of a motor vehicle, that person surrenders individual liberties to the extent necessary for compliance with relevant traffic statutes and ordinances that are necessary for the general welfare of the public.

There is no basis in any of the constitutional premises Brandmiller has raised that enables an individual who has accepted the privilege of driving a car to ignore speed limits, traffic signals or other rules of the road. The cruising ordinances are no different than any other traffic ordinance; they restrict the operation of motor vehicles on the city's streets. The "right to cruise" cannot be found in any of the constitutional provisions raised by Brandmiller. For these reasons, we decline to accept Brandmiller's invitation to include "cruising" within the protection afforded fundamental rights.

### Right to Privacy

Next, Brandmiller argues that the cruising ordinances infringe on her right to privacy. In asserting this, however, Brandmiller fails to cite any legal authority on point. In fact, a person has a "lesser expectation of privacy in a motor vehicle." *Cardell v. Lewis*, 417 U.S. 583, 590 (1974). The right to privacy in relation to traffic laws was discussed in *Bisenius v. Karns*, 42 Wis. 2d 42, 165 N.W.2d 377, *appeal dismissed*, 395 U.S. 709 (1969). The *Bisenius* court determined:

> There is no place where any such right to be let alone would be less assertible than on a modern highway. . . . When one ventures onto such a highway, he must be expected and required to conform to public safety regulations and controls, including some that would neither have been necessary nor reasonable in the era of horse drawn vehicles.

*Id.* at 55, 165 N.W.2d at 384.

In this case, the cruising ordinances were enacted for purposes of public safety and motorists must conform to these public safety regulations and controls. The ordinances do not violate the right of privacy.

### Overbreadth

We conclude with Brandmiller's claim that the ordinances are unconstitutionally overbroad. An ordinance or statute is unconstitutionally overbroad if it has the effect or potential of chilling or inhibiting speech, which is protected by the First Amendment. *City of Milwaukee v. Wroten*, 160 Wis. 2d 207, 225, 466 N.W.2d 861, 868 (1991). We note that the concept of overbreadth has never been recognized by the United States Supreme Court outside the limited context of the First Amendment. *See United States v. Salerno*, 481 U.S. 739, 745 (1987). The Wisconsin Supreme Court is in accord with this limited application of the overbreadth doctrine. *See Bachowski v. Salamone*, 139 Wis. 2d 397, 411, 407 N.W.2d 533, 539 (1987).[5] Therefore, unless the cruising ordinances infringe on a

---

[5] Although other authorities have suggested extending the application of the overbreadth doctrine to areas of illegal searches, self-incrimination and cruel and unusual punishment, *see* WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE

fundamental right protected by the First Amendment, we should not address the overbreadth challenge. *See State Univ. of N.Y. v. Fox*, 492 U.S. 469, 484-85 (1989) (courts are discouraged from reaching the overbreadth issue unnecessarily because to do so results in gratuitous wholesale attacks on state laws); *State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514, 520 (Ct. App. 1989) (cases should be decided on the narrowest possible ground).

Brandmiller asserts that the cruising ordinances infringe on an individual's freedom of religion, right to assemble, and right to associate, all of which are protected by the First Amendment. We cannot discern nor imagine any situations where driving in the same vehicle past a traffic control point more than twice, in a limited area during a limited time period, could infringe on the rights of assembly, association or religion as those rights are defined. The cruising ordinances are regulating the movement of a motor vehicle. They in no way attempt to prevent individuals from exercising First Amendment rights, such as placing political signs on their cars or painting any form of expression on their cars.

Our inability to conceive of any situation where the cruising ordinances infringe on First Amendment rights is strengthened by the well-established law that driving a car on the highways of this state is a privilege. *Seraphine*, 266 Wis. at 123, 62 N.W.2d at 406. Driving a car is not an activity or expression that is protected by the First Amendment. We conclude that the cruising ordinances do not infringe on First Amendment rights; therefore, Brandmiller does not

CRIMINAL LAW sec. 2.14 (1986), the instant case does not involve any of these additional areas.

have proper standing to argue that the ordinances are unconstitutionally overbroad.[6] *See Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988). Accordingly, we will not entertain Brandmiller's overbreadth challenge.[7]

---

[6] The dissent misunderstands the purpose of the overbreadth doctrine. The doctrine of overbreadth was designed as a departure from traditional rules of standing in situations where First Amendment rights are implicated. In other words, persons who are unharmed by a defect in a statute can challenge the statute on the ground that it may conceivably be applied unconstitutionally to others not presently before the court. *See State Univ. of N.Y. v. Fox*, 492 U.S. 569, 484-85 (1989). As we have already noted, absent a First Amendment interest, however, a person whose constitutionally protected interest is unaffected by a defect in a statute does not have standing to challenge its constitutionality. *Id.* In her overbreadth assertion, Brandmiller admits that the statute is not unconstitutional as it was applied to her and the others in the class, but that it might be unconstitutional as to other persons not presently before the court. The dissent ignores the longstanding law behind the limitations afforded the overbreadth doctrine, and concludes the cruising statutes are unconstitutional because they might affect a "shopper who returns to a store" or "the parent who circles the block to pick up a child." *See* dissent at 236, 525 N.W.2d at 361. The problem with the dissent's analysis is that Brandmiller was not a shopper or a parent picking up a child. Brandmiller was a "cruiser." A shopper or parent may challenge the constitutionality of the cruising ordinances in the event the shopper or parent is ticketed for cruising. This opinion holds merely that Brandmiller does not have proper standing to assert the overbreadth doctrine where no First Amendment interest is implicated.

[7] We note for purposes of clarity that this court recently chose to address the issue of whether a cruising ordinance is unconstitutionally overbroad. *See Scheunemann v. West Bend*, 179 Wis. 2d 469, 476-77, 507 N.W.2d 163, 166 (Ct. App. 1993).

## 2. Police Power Doctrine.

Brandmiller also argues that the ordinances were an improper exercise of police power. To determine whether the exercise of police power was proper, we need to examine whether the ordinance promotes a proper public purpose and whether the ordinance is reasonably related to the accomplishment of that purpose. *City of Milwaukee v. Kilgore*, 185 Wis. 2d 499, 518, 517 N.W.2d 689, 697 (Ct. App. 1994). The affidavits submitted by each municipality state essentially similar purposes for enacting the ordinances: to reduce dangerous traffic congestion that contributed to accidents and traffic violations; to reduce noise and air pollution; to reduce the obstruction of streets, sidewalks and parking lots; to allow clear access to shopping centers or other buildings open to the public; to prevent interference with the use of property or the conduct of business resulting from cruising; and to ensure access for emergency vehicles. Each of these enumerated problems poses a threat to public health, safety, and welfare. Each constitutes a proper public purpose. Therefore, the first requirement is easily met.

---

Because driving is not a fundamental first amendment right, it was not germane for the *Scheunemann* court to address the issue. Consequently, we consider the overbreadth discussion in *Scheunemann* to constitute dictum that is not binding on the decision presently before the court. It is *Scheunemann's* excursion into the overbreath doctrine that is dictum, not, as the dissent falsely represents, the standards *Scheunemann* applies. Given a case where a party has standing to assert that under the *Scheunemann* standards a cruising ordinance is unconstitutional those standards will be appropriately applied. But, as already noted in this opinion, the plaintiffs here do not have such standing.

Next, we examine whether the ordinances were reasonably related to the public purposes. The ordinances prohibit "cruising," which is defined as passing a particular point, on a designated street, in the same vehicle three times or more within a two-hour period between the hours of 8 p.m. and 5 a.m. The ordinances are limited to the period during the night when traffic congestion was a problem. The ordinances are limited to specific designated streets where a threat to public health, safety and welfare was found to exist by repetitive unnecessary driving of motor vehicles. The ordinances also list a number of circumstances where repeated passing of a vehicle by a control point is exempt from the ordinance's sanctions. These exemptions include emergency vehicles and "vehicles being driven for business purposes."

We conclude that the ordinances are reasonably related to the public purposes discussed above. Therefore, passing the cruising ordinances was a valid exercise of police power.

*3. Preemption.*

Finally, Brandmiller claims that the municipalities are preempted by state law from enacting cruising statutes. Brandmiller claims that chs. 341-350, STATS., preempt the municipalities from creating traffic regulations. Because this issue was not raised in the trial court, we shall not review it. *Nick v. Toyota Motor Sales*, 160 Wis. 2d 373, 386, 466 N.W.2d 215, 221 (Ct.

232

App. 1991) (issues not raised at the trial court are generally waived on appeal).[8]

*By the Court.*—Order affirmed.

SCHUDSON, J. (*dissenting*). With effective hyperbole ("the cruising ordinances are no different than any other traffic ordinance"), and sardonic sarcasm (" 'right to cruise' cannot be found in any of the constitutional provisions raised by Brandmiller") the majority ridicules the appellants' challenge. *See* majority op. at 227. How utterly convincing! How could one possibly disagree?

One small problem: the majority has neglected to address the issue in this case.

The issue is not whether cruising ordinances can be constitutional. The issue is whether these specific cruising ordinances are constitutional under the standards specified by Wisconsin law.

In *Scheunemann v. City of West Bend,* 179 Wis. 2d 469, 507 N.W.2d 163 (Ct. App. 1993), this court concluded that the cruising ordinance of the City of West Bend was constitutional. *Id.* at 478-481, 507 N.W.2d at 166-168. Just as certainly, however, the *Scheunemann* analysis set standards that are violated by these specific ordinances.

In *Scheunemann,* this court did allow an overbreadth challenge to a cruising ordinance.[1] Upholding

---

[8] We note that in *Scheunemann,* 179 Wis. 2d at 481-83, 507 N.W.2d at 168, we rejected this same contention on the merits.

[1] The majority states that this dissent "misunderstands the purpose of the overbreadth doctrine." Majority op. at 230 n.6. I understand the majority's apparent displeasure with the fact that *Scheunemann* utilized overbreadth analysis. The fact that *Scheunemann* did so, however, completes that debate until the

the constitutionality of the ordinance, we noted the important features that prevented it from being "so sweeping that its sanctions may be applied to constitutionally protected conduct which the state is not permitted to regulate." *Id.* at 476-477, 507 N.W.2d at 166. Among the features we specified:

> [T]he ordinance requires attendant circumstances which manifest a purpose to cruise.. . . Also, the ordinance requires that the offender harbor a specific intent to cruise. And finally, the ordinance requires that the officer give the suspected violator an opportunity to explain the driving conduct. If such explanation falls outside the reach of the ordinance, the officer is instructed not to arrest the suspect.

*Id.* at 477, 507 N.W.2d at 166. We then went on to note, "Even if an arrest occurs, the ordinance provides that the suspect shall not be convicted if the explanation offered to the officer was true and disclosed a lawful purpose for the driving conduct." *Id.* at n.3. We concluded, "*Given these limitations,. . .* the cruising ordinance is not unconstitutionally overbroad." *Id.* at 477-478, 507 N.W.2d at 166 (emphasis added).

Later in *Scheunemann*, this court was even more emphatic. We reiterated that the ordinance "allows for an 'on the scene' explanation by the suspect to the officer which, if accepted, will allow the citizen to be on his or her way." We then declared, "*With these limitations built into the ordinance*, we conclude that the city has carefully narrowed the application of the ordinance to the safety and congestion problems identified," and,

---

supreme court says otherwise. Thus, overbreadth analysis does apply in this case.

therefore, that it was constitutional. *Id.* at 480-481, 507 N.W.2d at 167-168 (emphasis added).

Thus, *Scheunemann* twice rests its holding on the "limitations" absent from the ordinances challenged in this case. The ordinances challenged here do not require an intent to cruise and do not provide any opportunity for explanation. Merely "[p]assing a designated control point a third time [in any two (2) hour period between the hours of 8:00 p.m. and 5:00 a.m.] *shall* constitute unnecessary repetitive driving and cruising and, therefore, a violation." Hales Corners Ordinance No. 90-16 § 2.22(2)(a) (emphasis added).

Unable to reconcile its holding with *Scheunemann*, the majority attempts to ignore *Scheunemann*'s clear standards. Thus, the majority relegates *Scheunemann* to a footnote stating that "we consider the overbreadth discussion in *Scheunemann* to constitute dictum that is not binding on the decision presently before the court." Majority op. at 230 n.7. The majority's apparent effort to avoid this court's clear precedent, however, is dubious to say the least. *See In re Court of Appeals of Wis.*, 82 Wis. 2d 369, 371, 263 N.W.2d 149, 149-150 (1978) (a published decision of one district of the Court of Appeals is binding on all other districts).

The *Scheunemann* standards are not dicta. The "limitations" were inextricably connected to the conclusion that the West Bend ordinance was constitutional. "[M]atters taken up and decided by the court which are germane to [the primary issue] 'are not *dictum*, and are . . . judicial act[s] of the court which it will recognize as . . . binding decision[s].' " *Professional Office Bldgs., Inc. v. Royal Indemnity Co.*, 145 Wis. 2d 573, 587-588, 427 N.W.2d 427, 432 (Ct. App. 1988); *see also State v. Kruse*, 101 Wis. 2d 387, 392, 305 N.W.2d 85, 88 (1981). Thus, the corresponding conclusion is inevitable: had

the West Bend ordinance not satisfied those standards, *Scheunemann* would have found it unconstitutional.

The *Scheunemann* standards make sense. Without *Scheunemann*'s "limitations," the shopper who returns to a store, the parent who circles the block to pick up a child, and countless other citizens would be subject to arrest. Their intentions and explanations would make no difference because their conduct "shall constitute . . . a violation."

Avoiding the *Scheunemann* standards, the majority has attempted to salvage these cruising ordinances despite their constitutional deficiencies. Claiming that those standards are dicta, the majority has misstated the law. I would address the issue, respect our precedent, and conclude that the specific cruising ordinances in this case violate *Scheunemann* and, therefore, are unconstitutional. Accordingly, I respectfully dissent.