ERVIN, Plaintiff in error, v. STATE, Defendant in error.

*Nos. State 90, 91. Argued December 3, 1968.—Decided December 20, 1968.*

(Also reported in 163 N. W. 2d 207.)

196

For the plaintiff in error there was a brief and oral argument by *Nathaniel D. Rothstein* of Milwaukee.

For the defendant in error the cause was argued by *Harold B. Jackson, Jr.*, assistant district attorney of Milwaukee county, with whom on the brief were *Bronson C. La Follette*, attorney general, and *David J. Cannon*, district attorney.

ROBERT W. HANSEN, J. It is the position of the defendant that his arrest and subsequent search were both illegal because the curfew proclamation of the mayor of Milwaukee and the statute authorizing it are alike unconstitutional. This is an across-the-board challenge to the constitutionality of the mayor's proclamation and to the enabling statute in any situation and under any circumstances.

*Scope of Review.*

There is no claim made here that the community situation in the summer of 1967 did not warrant the mayor's use of the power to declare a curfew as granted by the legislature. In fact, there is nothing in this record to even suggest what the conditions were in Milwaukee when the curfew was imposed. The district attorney and defense counsel stipulated that the testimony taken on the motion to suppress evidence was to stand as the testimony

and the only testimony taken at trial. At the hearing on the motion to suppress evidence, the only witness to testify was the officer who conducted the search and seized the marijuana found on the person of the defendant. So it is neither possible nor necessary to recreate the combination of widespread lootings, sniping from rooftops and multiple arsons that led the common council and the mayor to impose the curfew. The defendant is asserting that no matter how widespread the community chaos, anarchy and disorder, under no possible set of circumstances can the imposition of a community-wide curfew be upheld.

Likewise, there is here no narrowed challenge to the unconstitutionality of the curfew as specifically applied to the defendant. There is no testimony whatsoever as to where he was going or what he was going to do when he got there at the time of his arrest. Why he was on the streets at all must be left entirely to conjecture. For this reason the district attorney contends that the defendant lacks standing to raise the question of the constitutionality of the curfew proclamation.[1] We believe he has such standing, but only to challenge the proclamation and the statutory authorization on their faces, generally and not specifically as it relates to him.

*Statute and Proclamation.*

The Wisconsin statute under consideration authorizes the common council of cities of the first class, and in certain situations, the mayor acting for the council, to declare an emergency within such city and do what is necessary in such emergency, including the barring, restricting or removing of all unnecessary traffic from the

---

[1] "Before a law can be assailed by any person on the ground that it is unconstitutional, he must show that he has an interest in the question in that the enforcement of the law would be an infringement of his rights." 16 Am. Jur. 2d, *Constitutional Law*, p. 310, sec. 119.

local highways.[2] Under this statute, the mayor of Milwaukee issued his curfew proclamation, and his compliance with the statute is not at issue.[3]

*Freedom of Movement.*

Defendant asserts that imposing a curfew involves a restriction of movement of people within the community. Obviously, restriction of movement is a predictable and

[2] Sec. 66.325, Stats. "Emergency powers, cities of the first class. (1) Notwithstanding any other provision of law to the contrary, the common council of any city of the first class is empowered to declare, by ordinance or resolution, an emergency existing within such city whenever conditions arise by reason of war, conflagration, flood, heavy snow storm, blizzard, catastrophe, disaster, riot or civil commotion, acts of God, and including conditions, without limitation or restriction because of enumeration, which impair transportation, food or fuel supplies, medical care, fire, health or police protection or other vital facilities of such city. The period of such emergency shall be limited by such ordinance or resolution to the time during which such emergency conditions exist or are likely to exist.

"(2) The emergency power of the common council herewith conferred shall include . . . the power to bar, restrict or remove all unnecessary traffic, both vehicular and pedestrian, from the local highways . . . The common council may provide penalties . . .

"(3) In the event because of such emergency conditions the common council shall be unable to meet with promptness, the mayor or acting mayor of any city of the first class shall exercise by proclamation all of the powers herewith conferred upon the common council which within the discretion of the mayor are necessary and expedient for the purposes herein set forth; . . ."

[3] The proclamation of the mayor declaring a state of emergency and directing ". . . all streets, sidewalks and public ways of the City of Milwaukee . . . closed to vehicular and pedestrian traffic." dated 3:45 a. m., July 31, 1967, was ratified and adopted by resolution of the common council of the city of Milwaukee on July 31, 1967, with certain additional provisions including that all persons within the city of Milwaukee remain off of the streets, sidewalks and public ways; that no firearms, ammunition or weapons of any kind be sold, offered for sale, or given away; that all filling stations and petroleum supply points throughout the city of Milwaukee be closed.

inescapable result of a curfew proclamation or ordinance if it is enforced. Defendant then argues that full freedom of movement is protected by the first amendment to the United States Constitution,[4] made applicable to state and local governments by the fourteenth amendment to the United States Constitution.[5] Defendant concludes that the curfew proclamation was violative of the rights of the defendant under the first and fourteenth amendments.

We would not deny the relatedness of the rights guaranteed by the first amendment to freedom of travel and movement. If, for any reason, people cannot walk or drive to their church, their freedom to worship is impaired. If, for any reason, people cannot walk or drive to the meeting hall, freedom of assembly is effectively blocked. If, for any reason, people cannot safely walk the sidewalks or drive the streets of a community, opportunities for freedom of speech are sharply limited. Freedom of movement is inextricably involved with freedoms set forth in the first amendment.

The freedom to move about is a basic right of citizens under our form of government, in fact, under any system of ordered liberty worth the name. It was not added to our United States Constitution by the enactment of the first ten amendments. It is inherent, not only in the Bill of Rights, but in the original document itself. It has properly been termed "engrained in our history" and "a

---

[4] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." First amendment, United States Constitution.

[5] ". . . No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." Sec. 1, fourteenth amendment, United States Constitution.

part of our heritage." [6] However, freedom to walk under sniper's bullets, to grovel under a fusillade of gunfire, to leave one's home only to encounter milling mobs blocking every thoroughfare is not freedom of movement. A municipal curfew as was imposed in Milwaukee, is an emergency measure undertaken to restore order in the community. There is no claim made here and the fact may well be that the only alternative was accelerating community anarchy. The cause of liberty is never served by surrender to anarchy.

The purpose and result of the mayor's curfew proclamation was not to destroy freedom of movement, but to restore it. This is not the occasion and we are not the agency to analyze the causes of riots and disorders in major American cities in the summer of 1967, Milwaukee among them. Whether municipal authorities faced the phenomenon of simultaneous spontaneity, psychic contagion or planned escalation is not the question for us to answer. Whatever the cause, given the fact of widespread riotous conditions and criminal activities, the restoration of "domestic tranquility" becomes, not alone a constitutional right, but a constitutional obligation. The temporary imposition of a curfew, limited in time and reasonably made necessary by conditions prevailing, is a legitimate and proper exercise of the police power of

[6] "In Anglo-Saxon law that right [of travel] was emerging at least as early as the Magna Carta. Chafee, Three Human Rights in the Constitution of 1787 (1956), 171–181, 187 *et seq.*, shows how deeply engrained in our history this freedom of movement is. Freedom of movement across frontiers in either direction, and inside frontiers as well, was a part of our heritage. . . . It may be as close to the heart of the individual as the choice of what he eats, or wears, or reads. Freedom of movement is basic in our scheme of values. . . . 'Our nation,' wrote Chafee, 'has thrived on the principle that, outside areas of plainly harmful conduct, every American is left to shape his own life as he thinks best, do what he pleases, go where he pleases.' " *Kent v. Dulles* (1958), 357 U. S. 116, 125, 126, 78 Sup. Ct. 1113, 2 L. Ed. 2d 1204.

public authority. To argue contrarywise is to give to a mob a power to oppress that under our constitution is not given to the state itself. The constitution protects against anarchy as well as tyranny.

*Search and Seizure.*

In testing the validity of the search of the person here involved, the chronology of events becomes highly material. While the entire search took approximately two minutes, even so brief an inspection has its sequence of events. There is a dispute between defendant's counsel and district attorney as to such chronological sequence. However, the record, direct and cross-examination included, establish the sequence to be as follows:

1. The police officer searched the trouser pockets, checked the pants legs, found nothing.

2. The officer checked the waistband of defendant's trousers, found the packet containing marijuana.

3. The officer concluded that the defendant had no weapons on his person.

4. The officer examined the pockets of defendant's sweater and found the marijuana cigarette butt.

It is unreasonable searches and seizures that are prohibited by state and federal constitutions.[7] When a person is lawfully arrested, it is not unreasonable for the arresting officer to make a contemporaneous search of

---

[7] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Fourth amendment, United States Constitution.

"The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." Art. I, sec. 11, Wisconsin Constitution.

the person of the accused for weapons.[8] It is not only proper but prudent for the arresting officer to make certain that the person arrested is not carrying a gun, knife or other dangerous weapon. The law does not require a law enforcement officer to wait until a weapon is displayed or used to remove the danger of a weapon-involved assault upon him.

Defendant argues that the two minute search was too exhaustive to be justified as a search for weapons. Specifically, he contends that it is enough to "pat down" a defendant from the outside to remove any possibility of weapons being concealed on his person. It is true that there are limits to the type and extent of searching that can be reasonably related to a looking for weapons. A "minute search of a pocket in a shirt" not being worn by the arrested person, actually hanging in a closet off the living room, was held to be beyond the pale of permitted searching for weapons.[9] Where an automobile driver, placed under arrest for a traffic violation, was "patted down" for weapons, and then the pocket of his overcoat examined with a flashlight, this court held the flashlighting, following the "patting down" to go beyond the limits of a reasonable search for weapons.[10] In the case before us, the officer stayed well within such outer limits. In the light of the turbulent community situation then prevailing, he had every reason for a quick but thorough examination to remove the possibility of the

[8] "Likewise, weapons and instruments of escape may be searched for and taken to insure the safety of the arresting officers and the custody of the person arrested." *State v. Stevens* (1965), 26 Wis. 2d 451, 458, 132 N. W. 2d 502, citing *Agnello v. United States* (1925), 269 U. S. 20, 46 Sup. Ct. 4, 70 L. Ed. 145, 51 A. L. R. 409; *Browne v. State* (1964), 24 Wis. 2d 491, 129 N. W. 2d 175, 131 N. W. 2d 169; *Stoner v. California* (1964), 376 U. S. 483, 84 Sup. Ct. 889, 11 L. Ed. 2d 856.

[9] *State v. Dodd* (1965), 28 Wis. 2d 643, 137 N. W. 2d 465.

[10] *Barnes v. State* (1964), 25 Wis. 2d 116, 130 N. W. 2d 264.

arrested person being armed. He testified that weapons can be hid in many places, and obviously he checked the most likely hiding places. Where he found the packet of marijuana, the waistband of the defendant, is not an unusual hiding place for gun or knife. That he found an envelope of marijuana instead of revolver or switchblade does not affect the reasonableness of the search he was conducting. Given the police officer's testimony that he was searching for weapons and that the waistband is a likely place of concealment for a dangerous weapon, the trial court was entitled to find the search reasonable and to admit into evidence the marijuana contained in the unsealed envelope found in defendant's waistband.[11]

Objection is made to the search and seizure from the sweater pocket because it occurred after the checking of the trousers (pockets, pants legs and waistband) and after the officer had concluded, he testified, that the defendant was not armed. However, when the officer found the unsealed packet containing what he believed, on the basis of his experience in two prior marijuana possession cases, to be marijuana, he was entitled to complete the search to determine if the defendant had additional illegal marijuana on his person. Defendant's counsel argues that, if one cigarette is found in a person's side pocket, the fact that he may have a dozen more in a back pocket is entirely immaterial. We cannot agree. There are explanations for having two seeds of marijuana on one's person that would become incredible if used to explain carrying two pounds. In the sentencing phase of a marijuana prosecution, the judge is entitled to know the exact fact as to how much marijuana the defendant had on his person. The continuation or completion of the search, under the circumstances of this case, was not unreasonable.

[11] *Supra*, footnote 8, page 459. *See also Hutcherson v. United States* (D. C. Cir. 1965), 345 Fed. 2d 964, certiorari denied, 382 U. S. 894, 86 Sup. Ct. 188, 15 L. Ed. 2d 502.

Finally, defendant seeks a new trial, contending that the trial court erred in denying a motion for a new trial because (1) the trial court should have declared the mayor's proclamation unconstitutional; (2) the trial court should have ruled that the marijuana discovered on defendant's person was obtained through an illegal search and seizure. We have sustained the trial court on both counts. No reason exists for reversal.

*By the Court.*—Judgment affirmed.