Diane BRANDMILLER, Shane Evans, Jodie Kowalski,
Wendy Miller and Pamela Rogers, Plaintiffs-Appel-
lants-Petitioners,

v.

Phillip ARREOLA, John C. Butoric, Duwayne Dzibinski,
City of Greenfield, Village of Hales Corners, Chester
Kass, City of Milwaukee, City of West Allis and
Wayne Sagodzinski, Defendants-Respondents.

Supreme Court

*No. 93–2842. Oral argument November 28, 1995.—Decided
March 13, 1996.*

(Also reported in 544 N.W.2d 894.)

■■■■■■■
■■■■■■■

For the plaintiffs-appellants-petitioners there were briefs by *William A. Pangman, Rex R. Anderegg* and *William A. Pangman, S.C.,* Waukesha and oral argument by *William A. Pangman*

For the defendants-respondents there was a brief by *Scott E. Post,* City of West Allis, *Roger C. Pyzyk,* City of Greenfield, *Kurt A. Behling,* City of Milwaukee, *Daniel J. Sielaff,* Village of Hales Corners and oral argument by *Scott E. Post & Roger C. Pyzyk.*

WILLIAM A. BABLITCH, J.   Brandmiller, et al. (Brandmiller) challenge the constitutionality of various "cruising" ordinances enacted by the municipalities of West Allis, Milwaukee, Greenfield and Hales Corners (the Municipalities). Brandmiller argues that the cruising ordinances are unconstitutional under both the federal and the Wisconsin constitution because they violate the fundamental right to travel and are overbroad. The Municipalities argue that the ordinances do not impinge upon any fundamental right since they are merely traffic regulations. Although we recognize a fundamental right to intrastate travel, we hold that the cruising ordinances are constitutional as they are appropriate time, place and manner restrictions on the right to travel. In addition, the ordinances are not overbroad. Accordingly, we affirm.

The facts are undisputed. The Municipalities enacted ordinances barring "cruising." The ordinances are essentially identical in findings, purpose and wording. Each municipality found that a threat to public health, safety and welfare arises from the traffic congestion generated by repetitive unnecessary driving of

motor vehicles on certain streets. "Cruising" caused many problems which the cities could not control by the enforcement of existing laws or through increased police presence. The affidavit of Chester D. Kass, Chief of Police for the City of Greenfield, explains the severity of these problems:

> That the cruising increased to such a volume . . . that it created continual traffic congestion, specifically in the evening hours, which resulted in bumper-to-bumper traffic moving at very slow speeds to traffic stopped in a standing position for long periods of time; restricting patrons of . . . business lots because of their inability to enter a normal flow of traffic; preventing emergency vehicles from properly and expeditiously responding to emergencies . . . as a result of the congested bumper-to-bumper traffic conditions . . . .

> That other problems caused by the cruising include excessive noise from the volumes of vehicles and people on foot . . . excessive noise from the honking of horns, racing of engines and squealing of tires; increased automobile accidents and traffic offenses; other acts of disorderly conduct . . . .

In addition, John C. Butorac, Police Chief of the City of West Allis, also stated, in part:

> That cruising along Hwy. 100 has created traffic congestion which, at times, has resulted in: bumper to bumper traffic which moves at very slow speeds or not at all; . . . situations in which emergency vehicles have been unable to respond to emergencies [or] have been delayed in their response, or have [had] to take extraordinary action such as driving on the median or sidewalk.

533

Based on these findings, each municipality enacted a "cruising" ordinance.[1] The Municipalities claim that the ordinances are necessary to reduce dan-

[1] Because the ordinances are essentially identical, only the text of one ordinance is reprinted here. The Village of Hales Corners ordinance provides:

(1) FINDINGS AND PURPOSE. It is hereby found that a threat to the public health, safety and welfare arises from the congestion created by the repetitive unnecessary driving of motor vehicles, also known as cruising, at certain times on certain highways within the Village of Hales Corners. The purpose of this ordinance is to reduce the dangerous traffic congestion, as well as the noise, air pollution, obstruction of streets, sidewalks and parking lots, impediment of access to shopping centers or other buildings open to the public, interference with the use of property or conduct of business resulting from cruising, and to insure access for emergency vehicles to and through the said highways.

(2) DEFINITIONS.

(a) "Cruising" shall mean driving a motor vehicle past a traffic control point, on a highway in the designated area, more than twice in any two (2) hour period between the hours of 8:00 p.m. and 5:00 a.m. Passing a designated control point a third time under the aforesaid conditions shall constitute unnecessary repetitive driving and cruising and, therefore, a violation of this section.

(b) "Designated area" shall mean South 108th Street from the North Village Limits to the South Village Limits; West Forest Home Avenue from the East Village Limits to the South Village Limits; West Janesville Road from South 108th Street to the West Village Limits.

(c) "Traffic control point" shall mean a reference point within or adjacent to a designated area selected by a police officer for the purpose of enforcing this section.

(3) CRUISING PROHIBITED. It shall be unlawful for anyone to engage in cruising. For the purposes of this section, the person having control or ownership of a motor vehicle shall be considered the person cruising, without regard as to whether that person was actually driving the motor vehicle each time it passed the traffic control point. Having control or ownership of a motor vehicle shall mean either the owner of said vehicle, if present in the vehicle at

534

gerous traffic congestion, noise, and air pollution; to ensure access for emergency vehicles on the designated streets; and to reduce impediments to normal traffic flow.

The ordinances define "cruising" as driving a motor vehicle past a designated traffic control point more than twice in any two-hour period during a designated time span. In addition, the ordinances designate specific streets on which it is illegal to cruise. A violation is penalized by a monetary forfeiture. Finally, the cruising ordinances contain specific exceptions that exempt the following: governmental vehicles, emergency vehicles, taxicabs, buses, and other vehicles being driven for business purposes.

On May 26, 1990, the West Allis police ticketed Diane Brandmiller for violating the city's cruising ordi-

---

the time of the violation, or, if the owner is not present, the person operating the vehicle at the time of violation.

(4)   EXCLUSIONS. This section shall not apply to:

(a)   Any publicly owned vehicle or any city, county, state, federal or other governmental unit, while such vehicle is being used for official purposes of said governmental unit.

(b)   Any authorized emergency vehicle.x'

(c)   Any taxicabs for hire, buses, or other vehicles being driven for business purposes.

(5)   PENALTY. The penalties provided herein shall supersede the provisions of Section 2.21, Village Code, in the event of any conflict. Any person violating the provisions of this ordinance shall forfeit:

(a)   The sum of $50 upon the first conviction under this ordinance within a one-year period.

(b)   The sum of $100 upon the second conviction under this ordinance within a one-year period.

(c)   The sum of $200 upon the third and each subsequent conviction under this ordinance within a one-year period.

nance.[2] Brandmiller filed a motion for summary judgment requesting declaratory and injunctive relief. The Municipalities similarly sought summary judgment declaring the cruising ordinances constitutional. The circuit court granted the Municipalities' motion for summary judgment. The court of appeals affirmed.

Brandmiller raises various state and federal constitutional challenges to the Municipalities' cruising ordinances. We start with the presumption that the ordinances are constitutional and that, in order to prevail, Brandmiller must demonstrate otherwise beyond a reasonable doubt. *Richland School Dist. v. DILHR*, 174 Wis. 2d 878, 905, 498 N.W. 2d 826, 836 (1993).

We begin our discussion with Brandmiller's claim that the ordinances are unconstitutional because they violate her right to travel.[3] As to the constitutional

___

[2] Each of the members of the class, certified pursuant to Wis. Stat. § 803.08, were ticketed for violation of a cruising ordinance. Given the issues on appeal, however, the dates and particular circumstances of each violation are irrelevant to our resolution and, therefore, Brandmiller will serve as a representative for the entire class throughout the text of this opinion.

[3] Brandmiller asserts 10 constitutional challenges to the cruising ordinances and presents a separate and detailed analysis under each challenge. Brandmiller argues that:

(1)  the right to freedom of movement is a fundamental right; (2) the right to freedom of movement implicates other fundamental rights; (3) freedom of movement is a natural right secured by the Ninth Amendment; (4) freedom of movement is a natural right secured by the Tenth Amendment; (5) freedom of movement is a natural right secured by the Fourteenth Amendment; (6) freedom of movement is a natural right secured by the penumbra privacy protections; (6) the cruising ordinances violate inherent rights of liberty preserved and protected by Wis. Const. art. I, §§ 1 and 22; (7) ordinances abridging fundamental rights must be strictly scru-

aspects of this case, our review is de novo. *State v. Bertrand*, 162 Wis. 2d 411, 415, 469 N.W.2d 873 (1991).

The right to travel has long been recognized by the courts as inherent in our constitutional concepts of personal liberty. *Shapiro v. Thompson*, 394 U.S. 618, 631 (1969). The Supreme Court acknowledged that to enjoy the freedom to travel, citizens must be allowed to move "throughout the length and breadth of our land uninhibited by statutes, rules, or regulations which unreasonably burden or restrict that movement." *Id.* at 629. Because that right is fundamental, the Court reasoned, "any classification which serves to penalize the exercise of that right, unless shown to be necessary to promote a *compelling* government interest, is unconstitutional." *Id.* at 634. In *Kent v. Dulles*, 357 U.S. 116 (1958), the Court stated that "[t]he right to travel is a part of the 'liberty' of which the citizen cannot be deprived without due process of law under the Fifth Amendment." *Id.* at 125. The Supreme Court has firmly established interstate travel as a protected right that can be found in numerous constitutional provisions, but the Court has mentioned the right to travel intrastate only in passing. In *Attorney Gen. of New York v. Soto-Lopez*, 476 U.S. 898 (1986), the Court

tinized to ensure there is a compelling state interest and no less restrictive alternate means; (8) the exercise of police powers in the case at bar extend beyond the internal restraints placed upon those powers; (9) the cruising ordinances are unconstitutionally overbroad on their face and in their application; (10) the court of appeals erred by ignoring this court's precedent of applying the overbreadth doctrine to all constitutionally protected liberties, and not just to First Amendment rights.

We do not answer each of Brandmiller's challenges with the corresponding specificity as it appears to us that the common foundation for all of these arguments is the constitutional right to travel.

recently revisited the travel doctrine. The Court noted that the " 'freedom to travel throughout the United States has long been recognized as a basic right under the Constitution' . . . [a]nd, it is clear that the freedom to travel includes the 'freedom to enter and abide in any State in the Union.' " *Id.* at 901-02. The holding in *Soto-Lopez*, although recognizing the importance of an individual's travel within the boundaries of a state, indicates that the Supreme Court has not yet squarely addressed whether there exists a fundamental right to travel intrastate; instead, this issue has been left to the lower federal courts. *See* Comment, *Wisconsin, A Constitutional Right to Intrastate Travel, and AntiCruising Ordinances*, 78 Marquette Law Review 735, 742 (1995).

Under the Wisconsin Constitution, however, this court explicitly recognized the right to travel intrastate in *Ervin v. State*, 41 Wis. 2d 194, 200, 163 N.W. 2d 207 (1968). *Ervin* involved a constitutional challenge to a curfew proclamation imposed by the mayor of Milwaukee under the emergency powers statute because of riots during the summer of 1967. In *Ervin* we stated:

> The freedom to move about is a basic right of citizens under our form of government, in fact, under any system of ordered liberty worth the name. It was not added to our United States Constitution by the enactment of the first ten amendments. It is inherent, not only in the Bill of Rights, but in the original document itself. It has properly been termed "engrained in our history" and "a part of our heritage."

*Id.* at 200-01.

*Ervin* also recognized that the right to travel is interwoven with the full enjoyment of other fundamental rights retained by the people. Among the freedoms

intertwined with the right to travel is the First Amendment's guarantee of the right to assemble.

> We would not deny the relatedness of the rights guaranteed by the first amendment to freedom of travel and movement. If, for any reason, people cannot walk or drive to their church, their freedom to worship is impaired. If, for any reason, people cannot walk or drive to the meeting hall, freedom of assembly is effectively blocked. If, for any reason, people cannot safely walk the sidewalks or drive the streets of a community, opportunities for freedom of speech are sharply limited. Freedom of movement is inextricably involved with freedoms set forth in the first amendment.

*Id.* at 200.

Twenty years after *Ervin*, this court in *City of Milwaukee v. K.F.*, 145 Wis. 2d 24, 426 N.W. 2d 329 (1988), likewise reminded: "This right to be free to move about within one's own state is inherent and distinct from the right to interstate travel . . . ." *Id.* at 42. In *K.F.*, this court considered the constitutionality of a curfew ordinance. The appellants argued that the ordinance unconstitutionally intruded upon the freedom of movement and travel, and the freedom of association and assembly. *Id.* at 40. This court upheld the constitutionality of the ordinance while subjecting it to a strict scrutiny standard of review. We found that the ordinance was supported by the compelling interest of the city in controlling the nighttime activities of youths in order to protect both youths and the community from juvenile crime. *Id.* at 49.

Thus, independent of federal law, we recognize that the right to travel intrastate is fundamental among the liberties preserved by the Wisconsin Consti-

tution. This right to travel includes the right to move freely about one's neighborhood, even in an automobile. Therefore, although we look to federal law for support, we base our present conclusion on the right to travel intrastate as protected by our state constitution.

We now turn to the proper standard of review. Brandmiller argues that statutes that burden constitutionally protected rights survive only to the extent they are no more restrictive than necessary to achieve a compelling state interest. Brandmiller claims that the Municipalities' cruising ordinances cannot survive strict scrutiny. Although the Municipalities' asserted interests—ensuring public safety and reducing unwanted congestion, noise and pollution—are important, and can probably be deemed as compelling, Brandmiller contends that the tailoring of the ordinances is not the least restrictive means available.

The Municipalities contend that, since the ordinances in question are merely traffic laws enacted under the cities' police powers, the rational basis test should apply.

We disagree with both parties. We conclude that the intermediate level of scrutiny is the proper standard of review to apply. We adopt the intermediate scrutiny test as developed in *Lutz v. City of York, Pennsylvania*, 899 F.2d 255 (3d Cir. 1990).[4] Under this test, we inquire whether the cruising ordinances impose

---

[4]We acknowledge that *Lutz v. City of York, Pennsylvania*, 899 F.2d 255 (3d Cir. 1990), is based on the right to travel as defined by federal constitutional law. We base our decision today on the right to travel intrastate as found in the Wisconsin Constitution. Notwithstanding this difference, we find the reasoning of the *Lutz* court persuasive and adopt its analysis as it applies to the facts of this case.

"content-neutral time, place and manner restrictions that are narrowly tailored to serve significant government interests—not necessarily compelling ones—while leaving open ample alternative channels [by which the citizen may exercise the right at issue] . . . ." *Id.* at 269.

Not every governmental burden on fundamental rights must survive strict scrutiny.[5] Reviewing all infringements on the right to travel under strict scrutiny is as inappropriate as applying no heightened scrutiny to any infringement on the right to travel.

In *Lutz*, the Third Circuit addressed an issue similar to that which we deal with today: whether the city of York's cruising ordinance unconstitutionally violated the right to travel intrastate. The anticruising ordinance in *Lutz*, like the ordinances in the present case, defined "cruising" as: "driving a motor vehicle on a street past a traffic control point . . . twice in any two (2) hour period, between the hours of 7:00 pm. and 3:30 a.m." *Id.* at 257. The court determined that "the right to move freely about one's neighborhood or town, even by automobile" is a constitutional right based on the due process clause of the Fourteenth Amendment. *Id.* at 268.

In reaching its conclusion to apply intermediate scrutiny, the *Lutz* court relied on the time, place, and manner doctrine so firmly entrenched in the jurisprudence of free speech. The court explained that if freedom of speech, a right expressly protected by the First Amendment, could be regulated by an intermediate standard of review in certain circumstances, then the unenumerated right of intrastate travel could be

---

[5] Because the curfew ordinance in *K.F.* *did* survive strict scrutiny, we had no need to resolve the issue of whether strict scrutiny or a lesser standard was the correct standard to apply.

similarly regulated under such a judicial standard. *Id.* The court stated:

> The concerns underlying York's cruising ordinance seem to us highly analogous to the concerns that drive the time, place and manner doctrine: just as the right to speak cannot conceivably imply the right to speak whenever, wherever and however one pleases—even in public fora specifically used for public speech—so too the right to travel cannot conceivably imply the right to travel whenever, wherever and however one pleases—even on roads specifically designed for public travel.

*Id.* at 269.

In scrutinizing its cruising ordinance, the *Lutz* court first acknowledged that York's objective of ensuring the health, safety and welfare of its residents by enacting the cruising ordinance was significant. *Id.* at 269. Moreover, the court concluded that the anticruising statute was narrowly tailored to further these interests. The Third Circuit upheld York's cruising ordinance as a constitutional regulation of intrastate travel.

Our court of appeals adopted the *Lutz* analysis in *Scheunemann v. City of West Bend*, 179 Wis. 2d 469, 507 N.W.2d 163 (1993), in which West Bend's cruising ordinance was subjected to a similar constitutional challenge. In *Scheunemann*, the cruising ordinance was specifically limited in its application to a designated daily time span (between the hours of 8:00 p.m. and 4:00 a.m.) and to a designated area (Main Street between Paradise Drive and Washington Street). The ordinance also prescribed standards for cruising: three vehicular passes in the same direction of a traffic control point within a two-hour period under circumstances manifesting a purpose to cruise. *Id.* at

477. Finally, the ordinance required that the officer give the suspected violator an opportunity to explain the driving conduct. *Id.*

The court of appeals stated that it would "subject West Bend's cruising ordinance to intermediate scrutiny, and . . . uphold it if it is narrowly tailored to meet the city's objectives." *Id.* at 480. The court concluded that the ordinance was properly narrowed to address the safety and congestion problems of the city. *Scheunemann,* 179 Wis. 2d at 469. In addition, the court made an important observation:

> The city's cruising ordinance is not one which merely promotes a self-serving interest of government at the expense of the constitutional right of people to freedom of movement. Rather, the purpose of the ordinance is to create a safer and less congested public street so that the general populace might more easily travel the area in question. Viewed from this perspective, it can be said that the ordinance enhances rather than restricts the constitutional right to travel.

*Id.* at 481.

We agree with the logic of both *Lutz* and *Scheunemann.* Despite the fact that *Lutz* is based upon federal law, we find the reasoning of the Third Circuit in *Lutz* applicable to the facts of the present case.

Unlimited access to roadways would result not in maximizing an individual's opportunity to engage in protected activity, but in chaos. To prevent this, state and local governments must enjoy some degree of flexibility to regulate access to, and use of, the publicly held instrumentalities of travel. Therefore, in order to set out a workable jurisprudence for the right of localized

movement on the public roadways, we borrow from both *Lutz* and the well-settled rules developed in the free speech context.

In this case, the cruising ordinances will be subjected to intermediate scrutiny, and will be upheld if they are narrowly tailored to meet the significant objectives of the Municipalities.

We conclude that the cruising ordinances are reasonable time, place and manner restrictions on the right of localized intrastate travel. The Municipalities' interest in ensuring public safety and reducing the significant congestion caused by cruising are significant. The ordinances are limited in their scope to locations undisputedly affected by the current cruising problem, and it is undisputed that they leave open ample alternative routes to get about town without difficulty. They prohibit only certain repetitive driving on a specific stretch of highway, and they prohibit no one from driving outside of this specific area. Under these circumstances, the ordinances are narrowly tailored to combatting the safety and congestion problems identified by the Municipalities.

Brandmiller responds, however, that the ordinances are not as narrowly drawn as they should be. For example, they do not offer the opportunity for an "on the scene" explanation by the suspect to the officer which, if accepted, would allow the citizen to be on his or her way. Additionally, there is no requirement that there be a "purpose to cruise." Brandmiller asserts that the ordinances are merely a convenient tool for arbitrary and discriminatory enforcement by police officers against particular disliked groups.

We disagree. Like the ordinances in both *Lutz* and *Scheunemann*, these cruising ordinances are specifically limited in their application to a designated daily time span (between 8:00 p.m. and 5:00 a.m.) and to a designated area (South 108th Street from the North Village Limits to the South Village Limits; West Forest Home Avenue from the East Village Limits to the South Village Limits; West Janesville Road from South 108th Street to the West Village Limits). Further, the ordinances prescribe specific standards for cruising: driving a motor vehicle past a traffic control point on a highway more than twice in any two (2) hour period.

In addition, the fact that the ordinances lack an opportunity for an "on the scene" explanation makes an officer's possible abuse of discretion less likely. Under the Municipalities' ordinances, police officers do not have to subjectively evaluate an individual's statement after he or she is stopped for cruising.

██

Therefore, with these limitations built into the ordinance, we conclude that the Municipalities have carefully narrowed the application of the ordinance. The Municipalities need only write a narrowly tailored ordinance, not the least restrictive ordinance. *Lutz*, 899 F.2d at 270. Because the Municipalities have done so, the cruising ordinances must be upheld.

We make one final observation. Not every "burden" on the right of intrastate travel is sufficiently serious to trigger heightened scrutiny. Both the Municipalities and the lower courts characterized the cruising ordinances as traffic regulations. In the present case, we apply heightened scrutiny only because we conclude that these traffic regulations, unlike most, do impose nontrivial burdens on travel. Nothing we say today suggests that the more conventional traffic regu-

545

lations such as speed limits, stop signs, and the like need now be subjected to heightened judicial scrutiny.

We now turn to the second issue of whether the cruising ordinances are unconstitutionally overbroad. Brandmiller claims that the ordinances effectively sweep "protected activity within [their] reach [and] deter[ ] citizens from exercising their protected constitutional freedoms . . . ." *Bachowski v. Salamone*, 139 Wis. 2d 397, 411, 407 N.W. 2d 533, 539 (1987). The court of appeals failed to address this overbreadth claim stating that Brandmiller did not have proper standing.

We conclude that the court of appeals erred by failing to apply an overbreadth analysis in this case. This court has explained the concept of overbreadth as follows:

> "A statute is overbroad when its language, given its normal meaning, is so sweeping that its sanctions may be applied to constitutionally protected conduct which the state is not permitted to regulate. *Wilson,* 96 Wis. 2d at 19, [291 N.W.2d 452]. The essential vice of an overbroad law is that by sweeping protected activity within its reach it deters citizens from exercising their protected constitutional freedoms, the so-called 'chilling effect.' " *Bachowski,* 139 Wis. 2d at 411, 407 N.W.2d 533.

*K.F.,* 145 Wis. 2d at 39-40.

A plaintiff may have standing to challenge the constitutionality of a statute or ordinance even where his or her own conduct could constitutionally be regulated under a narrowly drawn law. *Id.* at 40 (citing *State v. Princess Cinema of Milwaukee, Inc.,* 96 Wis. 2d 646, 656, 292 N.W. 2d 807 (1980). Accordingly, in asserting

an overbreadth challenge an individual may hypothesize situations in which a statute or ordinance would unconstitutionally intrude upon First Amendment rights of third parties. In analyzing the constitutionality of potential applications of a regulation, however, "the court will not deem a statute or ordinance invalid because in some conceivable, but limited, circumstances the regulation might be improperly applied." *Id.* at 40.

It is apparent from the face of the cruising ordinances that these ordinances restrict the movement and associational rights of those individuals driving in a "no-cruising" zone. As discussed, the right to "move freely about one's neighborhood or town, even by automobile, is indeed 'implicit in the concept of ordered liberty' and 'deeply rooted in the Nation's history.' " *Lutz*, 899 F.2d at 268. This court has declared that "[e]qually important as the right to freedom of movement are the first amendment rights of free speech and assembly." *K.F.*, 145 Wis. 2d at 42. *See* U.S. Const. amend. I; Wis. Const. art. I, §§ 3 and 4. Therefore, we conclude that Brandmiller has standing to challenge the cruising ordinances since both the right to travel and First Amendment freedoms are implicated.

Brandmiller claims that the Municipalities' cruising ordinances are unconstitutionally overbroad because they lack an intent element and an opportunity to explain one's conduct to an officer. Brandmiller argues that the *Scheunemann* court determined that the West Bend ordinance was not overbroad because it had significant limitations including the requirement that a cruiser have the intent to cruise. *Scheunemann*, 179 Wis. 2d at 477.

We acknowledge that the cruising ordinances in the present case do not have the limitations found in the *Scheunemann* ordinance. However, the lack of an intent element and an opportunity to explain does not render the ordinances unconstitutional.

The cruising ordinances are narrowly tailored to deal with the unquestioned problems associated with cruising. The ordinances are limited in time to those hours of the day where cruising was shown to be a problem. They are limited to those streets where the Municipalities experienced cruising. They set forth the standards for cruising: three vehicular passes of a control point within a two-hour period. There are also numerous exceptions for vehicles operating with governmental or business purposes.

Thus, these cruising ordinances carefully carve out a narrow slice of driving conduct for regulation. *Scheunemann*, 179 Wis. 2d at 477. Given these limitations, we conclude that the Municipalities have satisfactorily demonstrated that the cruising ordinances are not unconstitutionally broad.

Based on all the above, we hold that the cruising ordinances are constitutional as they are appropriate time, place and manner restrictions on the right to travel. They are narrowly tailored to serve the significant government purposes discussed above. In addition, the ordinances are not overbroad.

*By the Court.*—The decision of the court of appeals is affirmed.