STATE of Wisconsin, Plaintiff-Respondent,

v.

Ralph E. RUESCH, Defendant-Appellant.

Court of Appeals

*No. 96–2280–CR. Submitted on briefs March 7, 1997.—Decided October 30, 1997.*

(Also reported in 571 N.W.2d 898.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *James L. Kroner, Jr.* of *Moen Sheehan Meyer, Ltd.* of La Crosse.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Tim Gruenke*, assistant district attorney.

Before Eich, C.J., Vergeront and Roggensack, JJ.

ROGGENSACK, J.   Ralph E. Ruesch appeals his conviction of a violation of § 940.32, STATS., the stalking law. Because we conclude that the State proved all the elements necessary to support a conviction of the violation charged, that § 940.32 is not unconstitutionally overbroad as applied, that it is not unconstitutionally vague, and that Ruesch's right to equal protection under the law has not been violated, we affirm.

## BACKGROUND

In 1985, Ruesch became infatuated with Paula Sheldon and began leaving notes and flowers in her car. His interest progressed to writing letters and making repeated telephone calls to her. His conduct continued even though Sheldon and her husband and the local police department all informed Ruesch that his attentions were unwelcome and were upsetting and harassing to Sheldon.

On November 16, 1990, Sheldon sought a harassment injunction to prevent Ruesch from contacting her. The injunction was granted, and for a period of two years, there was no contact noted by Sheldon. Then, on March 27, 1993, after the harassment injunction had expired, she again began to see Ruesch driving by her home and place of employment. The drive-bys continued on a random basis throughout 1993, 1994 and 1995 until August 10, 1995, when Sheldon pursued Ruesch in her own vehicle until he stopped. She told him to leave her alone, that she was married, and that she had no interest in him. Ruesch responded that sometimes people die and when they do, remarriage is possible. That frightened Sheldon, but nevertheless, she extracted a promise from Ruesch to stay away from

her. However, notwithstanding their conversation, Ruesch continued to follow Sheldon, which eventually resulted in his being charged with a violation of Wisconsin's stalking law, § 940.32, STATS.

After a trial, Ruesch was convicted of violating § 940.32(2), STATS.,[1] which states in relevant part:

> Whoever meets all of the following criteria is guilty of a Class A misdemeanor:
>
> (a) The actor intentionally engages in a course of conduct directed at a specific person that would cause a reasonable person to fear bodily injury to himself or herself or a member of his or her immediate family or to fear the death of himself or herself or a member of his or her immediate family.
>
> (b) The actor has knowledge or should have knowledge that the specific person will be placed in reasonable fear of bodily injury to himself or herself or a member of his or her immediate family or will be placed in reasonable fear of the death of himself or herself or a member of his or her immediate family.
>
> (c) The actor's acts induce fear in the specific person of bodily injury to himself or herself or a member of his or her immediate family or induce fear in the specific person of the death of himself or herself or a member of his or her immediate family.

## DISCUSSION

**Standard of Review.**

Determining the statutory elements of a crime is a question of law; therefore, our review is *de novo*. *See*

---

[1] This section was created by 1993 Wis. Act 96, § 2, effective December 25, 1993, and modified by 1993 Wis. Act 496, §§ 188–92, effective September 1, 1994.

*State v. Kummer*, 100 Wis. 2d 220, 224–25, 301 N.W.2d 240, 243 (1984). Additionally, we review challenges to the constitutionality of a statute without deference to the decision of the circuit court. *State v. Bertrand*, 162 Wis. 2d 411, 415, 469 N.W.2d 873, 875 (Ct. App. 1991).

## Elements of the Crime.

In order to obtain a conviction under the stalking law, the State must prove that Ruesch engaged in intentional, repetitive conduct directed at a specific person. The conduct must have been of a type that would objectively induce fear of personal harm in the victim or for a member of the victim's immediate family. The State must also prove the defendant had knowledge, actual or imputed, that such fear would result from the defendant's conduct, and that the conduct did produce such fear. Section 940.32(2), STATS. Ruesch's conduct had been on-going for years. When Sheldon obtained a court order to stop his advances, he unequivocally knew she objected to his behavior. Additionally, when Ruesch raised the specter that Sheldon's husband might die and therefore, her marriage would be no further impediment to their relationship, Sheldon was more than harassed. She was afraid, as a reasonable person would have been in similar circumstances.

Ruesch does not even contend that his conduct was not intentionally directed at Sheldon, or that it wasn't sufficiently repetitive to meet the requirements of the statute, or that a reasonable person in Sheldon's position would not have been afraid for herself or for her husband. Instead, he argues that because he used the public streets in his stalking of Sheldon, a use he claims is constitutionally protected, and because § 940.32(4), STATS., exempts constitutionally protected

conduct from the proscriptions of subsection (2), the State was required to prove that his conduct was not constitutionally protected. Because the State did not do so, as he contends is required by subsection (4), Ruesch argues that the evidence was insufficient to sustain his conviction.[2] He cites *Ervin v. State*, 41 Wis. 2d 194, 163 N.W.2d 207 (1968) and *Crandall v. Nevada*, 73 U.S. 35 (1867), to support his argument.

Neither case provides support for the contention that the State did not prove all the elements of the crime of stalking. *Ervin*, a curfew case, assumes that even if a First Amendment right is at issue, it can be limited under a "legitimate and proper exercise of the police power of public authority." *Ervin*, 41 Wis. 2d at 201–02, 163 N.W.2d at 211. *Crandall* involved a federal constitutional challenge to a capitation tax levied on persons leaving the State of Nevada. It focused on interstate travel; and as is discussed below, that is not the issue presented here.

Although no Wisconsin case has addressed the exact argument Ruesch presents, it was addressed by the Supreme Court of Montana in *State v. Martel*, 902 P.2d 14 (Mont. 1995), which reasoned that every subsection in a criminal statute does not necessarily encompass an element of the crime which the state must prove. *Id.* at 21. Our own reading of subsection (4) leads us to the same determination as that reached in *Martel* and to conclude that Ruesch's argument misconstrues § 940.32(4), STATS.

---

[2] Although Ruesch says he is challenging the sufficiency of the evidence, in reality he is arguing that there are elements of the crime in addition to those which he concedes the State has proved.

Subsection (4) was incorporated into the statute, as similar provisions have been in many states,[3] as an attempt to ward off facial constitutional challenges by making legislative intent clear through the listing of a few examples of conduct the legislature did not intend to limit. On its face, it focuses on rights of free speech and peaceful assembly, rights Ruesch does not even claim to have been exercising and it does not describe elements of the crime of stalking. Subsection (4) states in relevant part:

> (a)   This section does not apply to conduct that is or acts that are protected by the person's right to freedom of speech or to peaceably assemble with others under the state and U.S. constitutions, including, but not limited to, any of the following:
> 1.   Giving publicity to and obtaining or communicating information regarding any subject, whether by advertising, speaking or patrolling any public street or any place where any person or persons may lawfully be.
> 2.   Assembling peaceably.
> 3.   Peaceful picketing or patrolling.
> (b)   Paragraph (a) does not limit the activities that may be considered to serve a legitimate purpose under this section.

By contrast, the elements of the crime of stalking are set forth in subsection (2) which states, "Whoever meets all of the following criteria is guilty of a Class A misdemeanor" and thereafter the legislature listed the elements of the crime, in paragraphs (a) through (c) of subsection (2). Because subsection (4) provides no elements of the crime of stalking, it plays no role in the

---

[3] *See* M. Katherine Boychuk, *Are Stalking Laws Unconstitutionally Vague or Overbroad?*, 88 Nw. U. L. Rev. 769 (1994).

State's burden of proof at trial. Therefore, we conclude that the State met its burden of proving all the elements of the crime required by the statute.

**Constitutional Claims.**

■Ruesch makes various constitutional challenges to § 940.32, STATS. Our examination of them begins by noting that all statutes reach this court with a presumption that they are constitutional and we review those statutes to preserve their constitutionality. *Bertrand*, 162 Wis. 2d at 415, 469 N.W.2d at 875. A party who brings a constitutional challenge to a statute must show that it is unconstitutional beyond a reasonable doubt. *State v. McManus*, 152 Wis. 2d 113, 129, 447 N.W.2d 654, 660 (1989). Additionally, in regard to the vagueness challenge, Ruesch attempts to present a facial challenge to the constitutionality of the stalking law, striking down all possible applications of § 940.32. *Bowen v. Kendrick*, 487 U.S. 589, 600 (1988). Therefore, Ruesch must establish, beyond a reasonable doubt, that there are no possible applications or interpretations of the statute which would be constitutional. *United States v. Salerno*, 481 U.S. 739, 745 (1987).

### 1. Overbreadth.

■Ruesch maintains that the statute is "unconstitutionally overbroad," as applied to him, because it limits his right[4] of "freedom of movement." A statute is overbroad when its language, taken at its common

---

[4] Ruesch does not say whether the right he asserts is protected by the United States Constitution or the Wisconsin Constitution.

meaning, is written in such broad terms that it proscribes conduct which is constitutionally protected, as well as that which may be regulated, and thereby deters citizens from exercising their protected constitutional freedoms. *Brandmiller v. Arreola*, 199 Wis. 2d 528, 546, 544 N.W.2d 894, 901–02 (1996); *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973).

The right to travel, as a matter of federal constitutional law, is not enumerated in any of the amendments to the United States Constitution. Rather, various justices have suggested at least seven different sources for the right: the Article IV Privileges and Immunities Clause,[5] the Fourteenth Amendment Privileges and Immunities Clause,[6] the structural logic of the Constitution itself,[7] the Commerce Clause,[8] the Equal Protection Clause,[9] the Due Process Clause of the Fifth Amendment,[10] and the Due Process Clause of the Fourteenth Amendment.[11] However, all of the United States Supreme Court decisions to date have turned on the right of *interstate* travel, not the right of *intrastate* travel. And, intrastate travel is at issue here. Additionally, *Memorial Hosp. v. Maricopa County*, 415 U.S. 250, 255–56 (1974), strongly suggests that whether there is a constitutionally protected right to intrastate travel is a question which has been purpose-

[5] *Zobel v. Williams*, 457 U.S. 55, 71–78 (1982) (O'Connor, J., concurring).

[6] *Edwards v. California*, 314 U.S. 160, 177–81 (1941) (Douglas, J., concurring).

[7] *Crandall v. Nevada*, 73 U.S. 35 (1867).

[8] *Edwards*, 314 U.S. at 172.

[9] *Zobel*, 457 U.S. at 60 n.6.

[10] *Kent v. Dulles*, 357 U.S. 116, 125 (1958).

[11] *Williams v. Fears*, 179 U.W. 270, 274 (1900).

fully left unanswered by the Supreme Court.[12] Therefore, we decline to establish such right under the federal constitution as well.

The Wisconsin Supreme Court has recognized the lack of a definitive answer to the question of whether there is a right to intrastate travel under the United States Constitution, but in a well-reasoned decision, it concluded that the Wisconsin Constitution protects the right of intrastate travel on an independent basis. The "right to travel intrastate is fundamental among the liberties preserved by the Wisconsin Constitution. This right to travel includes the right to move freely about one's neighborhood, even in an automobile." *Brandmiller*, 199 Wis. 2d at 539–40, 544 N.W.2d at 899.

In *Brandmiller*, the court examined municipal cruising ordinances to determine whether they violated the Wisconsin Constitution. After finding a constitutional right to intrastate travel protected under the Wisconsin Constitution, the court reasoned that the intermediate level of scrutiny was the appropriate standard of review because "[n]ot every governmental burden on fundamental rights must sur-

---

[12] The United States Circuit Courts are split on the question of whether the United States Constitution guarantees a right to intrastate travel. Compare *Lutz v. City of York*, 899 F.2d 255, 268 (3rd Cir. 1990) (concluding that "the right to move freely about one's neighborhood or town, even by automobile, is indeed 'implicit in the concept of ordered liberty' and 'deeply rooted in the Nation's history.' ") (citation omitted); *Andre v. Board of Trustees of the Village of Maywood*, 561 F.2d 48, 53 (7th Cir. 1977) (which recognizes the issue, but avoids deciding it); and *Wright v. City of Jackson, Mississippi*, 506 F.2d 900, 901–02 (5th Cir. 1975) (which affirmed a dismissal for failure to state a claim when the lawsuit was based on a federal constitutional right of intrastate travel).

vive strict scrutiny." *Id.* at 541, 544 N.W.2d at 899. In so doing, it adopted the reasoning applied to the United States Constitution by the Third Circuit in *Lutz v. City of York*, 899 F.2d 255 (3rd Cir. 1990). Therefore, when we examine the stalking law under the intermediate level of scrutiny, we determine whether it imposes "content-neutral time, place and manner restrictions that are narrowly tailored to serve significant government interests—not necessarily compelling ones—while leaving open ample alternative channels [by which the citizen may exercise the right at issue]." *Brandmiller*, 199 Wis. 2d at 541, 544 N.W.2d at 899 (citing *Lutz*, 899 F.2d at 269).

Wisconsin is one of many states that has enacted a stalking law. It serves significant and substantial state interests by providing law enforcement officials with a means of intervention in potentially dangerous situations[13] before actual violence occurs, and it enables citizens to protect themselves from recurring intimidation, fear-provoking conduct and physical violence. *See* 32 CRIM. LAW BULL. 307 (1996).

The legislature carefully crafted the stalking law in a content-neutral way that is a reasonable time, place and manner restriction on the right to intrastate travel. In regard to time and place, the unlawful conduct must be repetitive, defined as occurring on two or more calendar days, where there is visual or physical proximity to a specific person, the victim. Section 940.32(1)(a) and (d), STATS. In regard to manner, the conduct must be intentional and occur under conditions which would induce fear of serious bodily harm or death in a reasonable victim, a victim whom the stalker

---

[13] As many as 90% of the women who are murdered by their husbands or boyfriends were stalked prior to the homicide. 32 CRIM. LAW BULL. 307, 308 (1996).

knows, or should know, will be afraid, and who actually has such fear. Section 940.32(2). The stalking law does not constrain the right to intrastate travel absent the specific intent, knowledge and effect of the acts required by § 940.32(2).

█

Ruesch argues only that the statute is overbroad as applied;[14] however, he does not explain what constitutionally protected intrastate travel he was prevented from accomplishing. He asserts no First Amendment right to intrastate travel and the only art. I rights which relate to the right of intrastate travel are the rights of free speech and peaceable assembly found in §§ 3 and 4. However, Ruesch does not argue that he was asserting his right of free speech or peaceable assembly, and even if he were, those rights may be limited in a constitutional manner. *Lutz*, 899 F.2d at 269; *Brandmiller*, 199 Wis. 2d at 541, 544 N.W.2d at 899. Ruesch has simply made no case which could sustain an overbreadth challenge. Therefore, we conclude that § 940.32, STATS., was not applied in an unconstitutional manner to Ruesch.

## 2. Vagueness.

---

[14] The United States Supreme Court has not recognized the existence of the overbreadth doctrine in a facial challenge to a statute, outside of the limited context of the First Amendment. *United States v. Salerno*, 481 U.S. 739, 745 (1987). While the Wisconsin Supreme Court has tied the right to freely move about to the associational rights found in the Wisconsin Constitution under art. I, § 4, it, too, will not entertain a facial overbreadth challenge absent constitutional underpinnings found in art. I, §§ 3 or 4. *Brandmiller v. Arreola*, 199 Wis. 2d 528, 547, 544 N.W.2d 894, 902 (1996) (citing *City of Milwaukee v. K.F.*, 145 Wis. 2d 24, 42, 426 N.W.2d 329, 337 (1988)).

Ruesch also challenges § 940.32, STATS., on the grounds that it is unconstitutionally vague. He bases this challenge on the contention that § 940.32 does not set standards of conduct sufficient for a reasonable person to determine what conduct is proscribed and what conduct is constitutionally protected. That is, he argues that he did not have fair notice of conduct which would be found unlawful because he believed his use of the public streets was constitutionally protected.

Vagueness is essentially a procedural due process concept which is driven by notions of fair play. Therefore, a statute is void for vagueness if it does not provide "fair notice" of the prohibited conduct and also provide an objective standard for enforcement of violations. *State v. Pittman*, 174 Wis. 2d 255, 276, 496 N.W.2d 74, 83 (1993). Stated another way, "[t]he first prong of the vagueness test is concerned with whether the statute sufficiently warns persons 'wishing to obey the law that [their] . . . conduct comes near the proscribed area.' " *Id.* (quoting *State v. Tronca*, 84 Wis. 2d 68, 86, 267 N.W.2d 216 (1978)). "The second prong is concerned with whether those who must enforce and apply the law may do so without creating or applying their own standards." *Id.* (citing *State v. Popanz*, 112 Wis. 2d 166, 173, 332 N.W.2d 750 (1983)). However, a statute is not void for vagueness because in some particular instance some type of conduct may create a question about its impact under the statute. *State v. Courtney*, 74 Wis. 2d 705, 711, 247 N.W.2d 714, 719 (1976). In order to be void for vagueness under the first prong, the statute must be so ambiguous that one who is intent upon obedience cannot tell when proscribed conduct is approached. *Id.* Under the second prong of enforceability, a statute is vague only if a trier of fact

must apply its own standards of culpability rather than those set out in the statute. *Id.* Additionally, if the alleged conduct of a defendant plainly falls within the prohibition of the statute, the defendant may not base a constitutional vagueness challenge on hypothetical facts, unless a First Amendment right is at issue. *Id.* at 713, 274 N.W.2d at 719. Stated another way, if the defendant is not asserting that a First Amendment right is burdened and his conduct plainly falls within the proscriptions of the statute, he cannot challenge the statute on vagueness grounds. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982).

Here, Ruesch's acts were repeated, intentional and directed at Sheldon. His remarks about her husband's potential death, enabling him to more freely pursue a relationship with her, increased the fear-inducing nature of his stalking. Additionally, nowhere in Ruesch's brief does he even make a pretense of not knowing that his advances were absolutely unwelcome or deny that he knew of the anxiety and fear they produced in Sheldon. However, notwithstanding those undisputed facts, Ruesch contends that because § 940.32(4), STATS., excepts constitutionally protected activity from the prohibition of the statute, it is unconstitutionally vague for the typical citizen, who does not have a clear understanding of his or her constitutional rights.

Ruesch's argument rings hollow. He cites no authority for a constitutional right to pursue another person until she fears for her safety or the safety of her husband, no matter where the pursuit occurs. Furthermore, his argument completely ignores Sheldon's rights, which certainly must figure in the balance of an

ordered society. And finally, Ruesch, whose conduct plainly falls within the prohibition of the statute, did not identify a First Amendment right[15] he was exercising when he stalked Sheldon. Furthermore, we have concluded that the stalking law is a reasonable time, place and manner restriction on the right to intrastate travel found in the Wisconsin Constitution. And finally, the inclusion of the element of intent significantly vitiates a claim that Ruesch (or any other defendant) was (or would be) misled about what conduct was proscribed. *See Salt Lake City v. Lopez*, 935 P.2d 1259, 1265 (Utah App. 1997). These determinations lead us to conclude that Ruesch had fair notice that his conduct would contravene the statute.

In regard to the second prong of the vagueness challenge, the need for an objective standard to be applied in evaluations of alleged violations, the stalking law provides the "reasonable person" standard for evaluating Ruesch's conduct. Section 940.32(2), STATS. In so doing, it prevents the finder of fact from establishing its own standard and establishes the requisite objective standard. *Pittman*, 174 Wis. 2d at 277–78, 496 N.W.2d at 84. Therefore, we conclude the statute satisfies the second prong of Ruesch's vagueness challenge.

## 3. Equal Protection.

---

[15] See discussion above which concludes there is no binding precedent on which this court can rely for the conclusion that the United States Constitution protects a right of intrastate travel.

Ruesch next argues that the stalking law is unconstitutional on equal protection grounds[16] because it excepts conduct involving labor disputes, while at the same time proscribing his conduct as unlawful. *See* para. (1)(c), subd. (4)(a)3 and subsec. (5). Therefore, he must show that those similarly situated are treated differently. *State v. Post*, 197 Wis. 2d 279, 318, 541 N.W.2d 115, 128 (1995). Generally, the Equal Protection Clause prohibits discrimination based on certain invidious classifications, but it does not, in and of itself, create substantive rights. *Lutz*, 899 F.2d at 265. The classification Ruesch sets out is not a suspect classification, such as those based on race, or even a quasi-suspect classification, but rather, it is one which he contends favors persons involved in labor disputes over some of those who are not.

When considering an equal protection challenge that does not involve a suspect classification "the fundamental determination to be made . . . is whether there is an arbitrary discrimination in the statute or its application, and thus whether there is a rational basis which justifies a difference in rights afforded." *State v. Akins*, 198 Wis. 2d 495, 503, 544 N.W.2d 392, 395 (1996) (citation omitted). A statute which creates an irrational or arbitrary classification violates equal protection. *Id.* at 505, 544 N.W.2d at 396.

In enacting the stalking law, the legislature has chosen to criminalize certain conduct which experience has shown too often led to physical violence when law enforcement personnel had no effective means of inter-

---

[16] Ruesch bases his challenge on the Fourteenth Amendment of the United States Constitution and art. I § 1 of the Wisconsin Constitution.

vention, and to assist citizens who need to protect themselves from fear-provoking conduct. The statute defines "labor dispute" and also recognizes that picketing to redress a labor grievance is a form of speech that has long been constitutionally protected and held to serve a worthwhile public purpose. *State v. Migliorino*, 150 Wis. 2d 513, 534, 442 N.W.2d 36, 45 (1989); § 940.32(1)(c), (4)(a)3 and (5), STATS. By contrast, stalking provides no social benefit, but instead contributes to fear and violence. And while it may be true that there have been occasions in the past where labor disputes have gotten out of hand, law enforcement had other statutory tools to contain that unruly conduct. *See* § 947.01, STATS., (regulating disorderly conduct) and § 947.06, STATS., (controlling unlawful assemblies). Therefore, we conclude that the statutory distinction is rationally related to a valid legislative purpose.

Ruesch makes a second equal protection argument, which is intertwined with that addressed above. He asserts that the stalking law is irrational because it creates a broad class exemption for all persons involved in labor disputes, even if they are engaged in otherwise *unlawful* conduct. Therefore, continues the argument, he is punished for his unlawful conduct, but those involved in labor disputes are not. He bases this contention on the fact that subsection (5) does not contain the adjective, "lawful" preceding the words "labor dispute," and on his interpretation of *Consolidated Edison Co. v. Public Serv. Comm'n*, 447 U.S. 530 (1980), *Police Dep't of City of Chicago v. Mosley*, 408 U.S. 92 (1972), *Carey v. Brown*, 447 U.S. 455 (1980), and *Migliorino*, 150 Wis. 2d 513, 442 N.W.2d 36.

Ruesch's argument is without merit. He misinterprets all of the cases he has cited to support his contention and he ignores the statutory definition of

"labor dispute" set out in § 940.32(1)(c), STATS. Further-
more, to interpret § 940.32(5) as giving those involved
in labor disputes a license to commit unlawful conduct
is contrary to common sense.[17]

Ruesch cites *Consolidated Edison* for the proposi-
tion that the legislature could not reasonably allow
unlawful activity relating to labor disputes, if it would
otherwise be stalking. However, *Consolidated Edison*
is a free speech case where the Court concluded Consol-
idated Edison had the right to send inserts that
addressed controversial issues of public policy with its
bills. The Court reasoned that content-based restric-
tions of speech are subject to heightened scrutiny and
that because the restrictions on Consolidated Edison's
speech were content-based, they offended the United
States Constitution. *Consolidated Edison*, 447 U.S. at
544. *Consolidated Edison* does not assist Ruesch,
because even speech can be constitutionally regulated.
*Lutz*, 899 F.2d at 271.

*Mosley* was also based on First Amendment rights
and the effect the ordinance had on speech (picketing),
depending on the content of the speech. It held that
under the Equal Protection Clause a municipality
could not exempt labor picketing from a general prohi-
bition of picketing at a school, because to do so would
base the speech restriction on content. (Mosley had
frequently picketed, carrying a sign that read: "Jones
High School practices black discrimination. Jones High
School has a black Quota.") Ruesch does not claim that
he was exercising rights of protected speech when he
stalked Sheldon, or that protected speech was being
regulated because of its content. Nor could he do so
under the facts of this case. *Mosley* has no application.

---

[17] While some may say that the law and common sense are
not synonyms, they should not be opposites.

*Carey* was based on principles similar to those announced in *Mosley*. It held that government could not permit picketing that supported one issue (labor) while proscribing picketing that supported a different issue (race). Here, Ruesch is not claiming that he wants to picket in either a lawful or an unlawful way. He wants to be permitted to stalk Sheldon. Because we conclude that the stalking law does not create an arbitrary classification, it does not offend the Equal Protection Clause.

## CONCLUSION

In conclusion, Ruesch has not met his burden of proving § 940.32, STATS., the stalking law, is unconstitutional beyond a reasonable doubt. Therefore, we affirm the judgment of the circuit court.

*By the Court.*—Judgment affirmed.